ACCEPTED
06-14-00079-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/12/2015 11:46:35 PM
DEBBIE AUTREY
CLERK

No. 06-14-00079-CR
Trial Court Nos. 13F-1051-102

IN THE COURT OF APPEALS
FOR THE SIXTH SUPREME JUDICIAL DISTRICT
AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
3/13/2015 9:51:00 AM
DEBBIE AUTREY
Clerk

**Justin Sanders,**                                                         *Appellant*

**v.**

**The State of Texas,**                                                    *State*

Appealed from the 102nd Judicial District Court
Bowie County, Texas



BRIEF FOR THE STATE
The State Does Not Request Oral Argument

**Respectfully submitted:**

**Jerry D. Rochelle**
*Criminal District Attorney*
Bowie County, Texas
601 Main Street
Texarkana, Texas 75501

By:   **Samantha J. Oglesby**
*Assistant Criminal District Attorney*
Bowie County, Texas
Texas Bar No. 24070362

**Attorneys for the State**

# In The Court of Appeals
## For the Sixth Supreme Judicial District
## At Texarkana, Texas

| | | |
|---|---|---|
| Justin Sanders,<br>    *Appellant* | §<br>§<br>§<br>§ | No. 06-14-00079-CR |
| The State of Texas,<br>    *State* | §<br>§<br>§<br>§ | BRIEF FOR THE STATE |

## Identity of the Parties

The following is a complete list of all the parties to the trial court's judgment

as required by the provisions of Rule 38.2(a) of the Texas Rules of Appellate

Procedure:

1.  Defendant and Appellant:

    **Justin Sanders**

2.  Attorney for Appellant at trial:

    **Rick Shumaker**
    Texas Bar No. 18325300
    **William Williams**
    Texas Bar No. 24072804
    Bowie County Public Defender's Office
    424 West Broad Street
    Texarkana, Texas 75501

3.  Attorney for Appellant on appeal:

    **Craig Henry**
    Texas Bar No. 09479260

723 Main Street
Texarkana, Texas 75504

4. Appellee

**State of Texas**

5. Attorney for the State of Texas at trial and on appeal:

**Samantha J. Oglesby**
Assistant Criminal District Attorney
Bowie County District Attorney's Office
Texas Bar No. 24070362
601 Main Street
Texarkana, Texas 75501

6. Attorney for the State of Texas at trial:

**Kelley Crisp**
Assistant Criminal District Attorney
Bowie County District Attorney's Office
Texas Bar No. 24062683
601 Main Street
Texarkana, Texas 75501

7. Presiding Judge at trial:

**The Honorable Bobby Lockhart**
District Court Judge
102nd Judicial District
Bowie County, Texas
Bi-State Justice Building
100 North State Line Avenue
Texarkana, Texas 75501

# Table of Contents

Identity of the Parties and Counsel ...................................................................... i-ii

Table of Contents ........................................................................................... iii-iv

Index of Authorities ........................................................................................ v-xii

Statement of the Case ............................................................................................ 1

Reply to Points of Error .................................................................................... 2-3

Summary of the Argument ................................................................................. 4-9

Argument ......................................................................................................... 10-87

    Reply to Point of Error Number One ........................................... 10-18
    The trial court did not err by overruling Appellant's Motion to Quash because the State was not required to allege the elements of the underlying offense in an indictment for felony murder. Furthermore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction.

    Reply to Point of Error Number Two ........................................... 18-25
    The trial court did not submit a fundamentally defective jury charge. However, the error, if it was error, does not constitute egregious harm.

    Reply to Point of Error Number Three ........................................ 25-35
    Appellant failed to preserve this claim of error for appellate review. However, the trial court did not violate Article 38.05 by commenting on Appellant's bond revocation during the punishment phase. Furthermore, any error, if it was error, was harmless.

    Reply to Point of Error Number Four ........................................... 35-41
    Appellant failed to preserve his due-process claim for appellate review. However, the trial court did not abuse its discretion in denying Appellant's request for a mistrial based on the prosecutors' wearing of "fallen officer" wristbands

Reply to Point of Error Number Five............................................. 41-53
The trial court did not err by allowing the introduction of extraneous offense evidence because it was relevant to show motive, intent, identity and state of mind. Furthermore, any error, if it was error, was harmless.

Reply to Point of Error Number Six ............................................. 53-64
The trial court did not error in overruling Appellant's Motion to Suppress evidence obtained from Defendant's cellular phone when Appellant gave valid consent for the seizure and search of his phone. In addition to the valid consent, officers also searched pursuant to a valid warrant.

Reply to Point of Error Number Seven......................................... 64-74
Appellant failed to preserve error for appellate review. However, the State's attorneys did not engage in prosecutorial misconduct by rebutting the defense's claim that the witness had a motive or bias to testify. Furthermore, any error, if it was error, is not reversible error.

Reply to Point of Error Number Eight ......................................... 74-85
The State produced legally sufficient evidence to connect Appellant to the murder of Officer William Jason Sprague

Prayer for Relief...............................................................................86

Certificate of Compliance .................................................................87

Certificate of Service .......................................................................88

iv

# Index of Authorities

## Cases

*Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994)..................................... 18

*Alamanza v. State*, 686 S.w.2d 157 (Tex. Crim. App. 1984) ................................ 22

*Anderson v. State*, 301 S.W.3d 276 (Tex. Crim. App. 2009) ................................ 36

*Anderson v. State*, 635 S.W.2d 722 (Tex. Crim. App. 1982) ............................ 69-70

*Aschbacher v. State*, 61 S.W.3d 532 (Tex. App. – San Antonio 2001, pet. ref'd) 27

*Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008)......................................... 45

*Bates v. State,* 88 S.W.3d. 727 *(*Tex. App.-Tyler 2002, pet. ref'd*)* ....................... 56

*Bauder v. State*, 921 S.W.2d 696 (Tex. Crim. App. 2013).................................... 37

*Bautista v. State*, 363 S.W.3d 259 (Tex. App. – San Antonio 2012, no pet.) ....... 66

*Becknell v. State*, 720 S.W.2d 526 (Tex. Crim. App. 1986)...................31-32, 34-35

*Belt v. State*, 127 S.W.3d 277 (Tex. App. – Fort Worth 2004, no pet.) ................ 36

*Berger v. United States*, 295 U.S. 78, 84 (1935) ................................................... 65

*Bower v. State*, 769 S.W.2d 887 (Tex. Crim. App. 1989) ..................................... 61

*Brasfield v. State*, 30 S.W.3d 502 (Tex. App. –Texarkana 2000, no pet.) ...... 26, 36

*Brick v. State*, 738 S.W.2d 676 (Tex. Crim. App. 1987).......................... 36, 56-57

*Britt v. State*, No. 14-06-00131-Cr, 2007 WL 1251490 (Tex. App. Houston [14th Dist.] April 26, 2007, pet. ref'd) ......................................................................... 44

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .................................... 75

*Buchanan v. State*, 207 S.W.3d 772 (Tex. Crim. App. 2006) ............................... 35

*Bundy v. Duggar*, 850 F2d 1402, 1424 (11th Cir. 1988), cert. denied, 488 U.S.1034 (1989) ........................................................................................................ 38

*Burge v. State*, 443 S.W.2d 720 (Tex. Crim. App. 1969), *cert. denied*, 396 U.S. 934 (1969) ........................................................................................................ 28

*Calton v. State*, 132 S.W.3d 29 (Tex. App. – Fort Worth 2004, pet. ref'd) .......... 13

*Cameron v. State*, 401 S.W.2d 809 (Tex. Crim. App. 1966)................................. 11

*Carmouche v. State,* 10 S.W.3d 323 (Tex. Crim. App. 2000)............................... 54

*Chafin v. State*, 95 S.W.3d 549 (Tex. App. – Austin 2002, no pet.) ..................... 75

*Clark v. State*, 365 S.W.3d 333 (Tex. Crim. App. 2012) ..................................... 35

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010) ....................32-33, 52, 71

*Colburn v. State*, 966 S.W.2d 511 (Tex. Crim. App. 1998) ............................ 34, 53

*Crane v. State,* 786 S.W. 2d 338 (Tex. Crim. App. 1990)............................... 44, 50

*Cuba v. State*, 905 S.W.2d 729 (Tex. App. – Texarkana 1995, no pet.) .............. 72

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009)............................... 42

*DeVaughn v. State*, 749 S.W.2d 62 (Tex. Crim. App. 1988) ................................ 10

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) .................................. 13

*Dittman v. State*, No. 05-11-00345-CR, 2012 WL 3139873 (Tex. App. – Dallas August 3, 2012, pet. ref'd) ....................................................................................17

*Dixon v. State*, 2 S.W.3d 263 (Tex. Crim. App. 1998)..........................................69

*Duron v. State*, 956 S.W.2d 547 (Tex. Crim. App. 1997) .....................................15

*Estelle v. Williams*, 425 U.S. 501 (1976)..............................................................38

*Ex Parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007) ....................................37

*Flippo v. West Virgina*, 528 U.S.11 (1999) ................................................55

*Florida v. Jimeno*, 500 U.S. 248 (1991) ...............................................55

*Fuentes v. State*, 991 S.W.2d 267 (Tex. Crim. App. 1999)................................75

*Goff v. State*, 931 S.W.2d 537 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1171 (1997) .................................................................................26, 36

*Graham v. State*, 624 S.W.2d 785 (Tex. App. – Fort Worth 1981, no pet.)............31

*Guerra v. State*, No. 07-09-00283-CR, 2010 WL 2816215 (Tex. App. – Amarillo July 19, 2010, pet. ref'd) ...........................................................44

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004)....................................86

*Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997) .....................................54

*Hammett v. State*, 578 S.W.2d 699 (Tex. Crim. App. 1979) .................................13

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989)....................................72

*Havard v. State*, 800 S.W.2d 195 (Tex. Crim. App. 1989) ..................................26

*Hernandez v. State*, 219 S.W.3d 6 (Tex. App. – San Antonio 2006), aff'd, 273 S.W.2d 685 (Tex. Crim. App. 2008) ................................................68

*Hodge v. State*, 488 S.W.2d 779 (Tex. Crim. App. 1973)....................................68

*Holbrook v. Flynn*, 475 U.S. 560 (1986) ........................................ 37-38

*Hollaway v. State*, 446 S.W.3d 847 (Tex. App. – Texarkana 2014, no pet.) ..........37

*Howard v. State*, 941 S.W.2d 102 (Tex. Crim. App. 1996) ..................................37

*Huffman v. State*, 746 S.W.2d 212 (Tex. Crim. App. 1988)..................................68

*Ibarra v. State,* 11 S.W.3d 189 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 828 (2000) ..................................................................................26, 36

*Jackson v. State*, 548 S.W.2d 685 (Tex. Crim. App. 1977)........................................28

*Jackson v. Virginia*, 443 U.S. 307 (1979)........................................75

*Jiminez v. State*, 298 S.W.3d 203 (Tex. App. – San Antonio 2009, pet. ref'd).......66

*Johnson v. State*, 72 S.W.3d 346 (Tex. Crim. App. 2002) ........................................52

*Johnson v. State*, 84 S.W.3d 726 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd)51

*Johnson v. State*, 932 S.W.2d 296 (Tex. App. –Austin 1996, pet. ref'd) ...............50

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ........................................32

*Jonson v. State*, 517 S.W.2d 170 (Tex. Crim. App. 1978) ........................................75

*Jordan v. State*, 1 S.W.3d 153 (Tex. Crim. App. 1999) ........................................13

*Joslin v. State*, 305 S.W.2d 351, 352 (Tex. Crim. App. (1957)........................................56

*Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977) ........................................65

*Kitchens v. State*, 279 S.W.3d 733 (Tex. App. – Amarillo 2007, pet. ref'd)...........20

*Knox v. State*, 934 S.W. 2d 678 (Tex. Crim. App. 1996) ........................................43

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ........................................75

*Lawrence v. State*, 240 S.W.3d 912 (Tex. Crim. App. 2007)........................................10

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998)........................................33, 52

*Linciciome v. State*, 3 S.W.3d 644 (Tex. App. – Amarillo 1999, no pet.)...............42

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ........................................76

*Mantooth v. State*, 269 S.W.3d 68 (Tex. App. – Texarkana 2008, no pet.) ...........15

*Marks v. State*, 617 S.W.2d 250 (Tex. Crim. App. 1981) ........................................27

*Marquez v. State*, 725 S.W.2d 217 (Tex. Crim. App. 1987) ............................ 29-30

*Marron v. United States*, 275 U.S. 192 (1927) ........................................60

*Martin v. State*, 176 S.W.3d 887 (Tex. App. – Fort Worth 2005, no pet.).............51

*Martinez v. State*, 327 S.W.3d 727 (Tex. Crim. App. 2010) ..................................42

*Matson v. State*, 819 S.W.2d 839 (Tex. Crim. App. 1991)............................... 75-76

*Matz v. State*, 21 S.W.3d 911 (Tex. App. – Fort Worth 2000, pet. ref'd) ..............32

*Mayes v. State*, 816 S.W.2d 79 (Tex. Crim. App. 1991) ..................................33, 52

*McGuire v. State*, No. 01-11-01089-CR, 2012 WL 344952, at * 3 (Tex. App. – Houston [1st Dist.] February 2, 1012, pet. ref'd) ......................................17

*Mestiza v. State*, 923 S.W.2d 720 (Tex. App. – Corpus Christi 1996, no pet.).......25

*Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003) ................................18

*Montgomery v. State*, 810 S.W. 2d 372 (Tex. Crim. App. 1991) ................42, 44, 48

*Moore v. State*, 295 S.W.3d 329 (Tex. Crim. App. 2009) ....................................25

*Morales v. State*, 32 S.W.3d 863 (Tex. Crim. App. 2002) .................... 32, 52, 71-72

*Morfin v. State,* 34 S.W.3d 664 (Tex. App.—San Antonio 2000, no pet.) .............54

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)........................................52

*Nguyen v. State*, 977 S.W.2d 450 (Tex. App. – Austin 1998), aff'd, 1 S.W.3d 694 (Tex. Crim. App. 1999)................................................................................40

*Peavey v. State*, 248 S.W.3d 455 (Tex. App. - Austin 2008, pet. ref'd) ........... 26-27

*Penry v. State*, 903 S.W.2d 715 (Tex. Crim. App. 1995)........................................65

*Peters v. State*, 31 S.W.3d 704 (Tex. App. – Houston [1st Dist.] 2000, pet. ref'd)52, 71

*Phelps v. State*, 999 S.W.2d 512 (Tex. App. – Easland 1999, pet. ref'd.) ..............42

*Powell v. State*, 189 S.W. 3d 285 (Tex. Crim. App. 2006) ................................44, 47

*Powell v. State*, 63 S.W. 3d 435 (Tex. Crim. App. 2001) ........................................44

*Resendez v. State*, 160 S.W.3d 181, 189-90 (Tex. App. – Corpus Christi 2005, no pet.)........................................................................................................................26

*Riley v. California*, -- U.S. --, 134 S.Ct. 2473 (2014)........................................ 58-59

*Robbins v. State*, 88 S.W.3d 256 (Tex. Crim. App. 2002) ......................................42

*Robinson v. State*, 35 S.W.3d 257 (Tex. App. – Texarkana 2000, pet. ref'd).........42

*Rogers v. State*, 640 S.W.2d 248 (Tex. Crim. App. 1982) ......................................26

*Rogers v. State*, 725 S.W.2d 350 (Tex. App. – Houston [1st Dist.] 1987, no pet.)65-67

*Romero v. State*, 800 S.W. 2d 539 (Tex.Crim.App. 1990).......................................51

*Sharpe v. State*, 648 S.W.2d 705 (Tex. Crim. App. 1983) ......................................28

*Shelling v. State*, 52 S.W.3d 213 (Tex. App. – Houston [1st Dist.] 2001, pet. ref'd)67

*Simon v. State*, 203 S.W.3d 581 (Tex. App. – Houston [14th Dist.] 2006, no pet.).32

*Smith v. State*, 502 S.W.2d 133 (Tex. Crim. App. 1973) ........................................11

*Snowden v. State*, 353 S.W.3d 815 (Tex. Crim. App. 2011) .............................. 61-62

*Stahl v. State*, 749 S.W.2d 826 (Tex. Crim. App. 1998) .........................................68

*State v. Mays*, 967 S.W.2d 404 (Tex. Crim. App. 1998)........................................10

*State v. Moff*, 154 S.W.3d 599 (Tex. Crim. App. 2004)........................................10

*State v. Weaver*, 349 S.W.3d 521 (Tex. Crim. App. 2011) ....................................55

*Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990) ................................. 15-16

*Swarb v. State*, 125 S.W. 3d 672 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd) ................................................................................................................43

*Teal v. State*, 230 S.W.3d 172 (Tex. Crim. App. 2007) ............................ 16-17, 19

*Tompkins v. State*, 774 S.W.2d 195 (Tex. Crim. App. 1987) .................................13

*Trejo v. State*, 313 S.W.3d 870 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd)23

*Turro v. State*, 867 S.W.2d 43 (Tex. Crim. App. 1993) ........................................75

*Vital v. State*, Nos. 02-02-00421-CR, 02-02-00422-CR, 2003 WL 22966375 (Tex. App. –Fort Worth December 18, 2003, no pet.).......................................................44

*Weatherred v. State*, 15 S.W.3d 540 (Tex. Crim. App. 2000)...............................42

*Weed v. State*, 129 S.W.3d 126 (Tex. Crim. App. 2004).......................................37

*Werner v. State*, 412 S.W.3d 542 (Tex. Crim. App. 2013).....................................52

*West v. State*, Nos. 05-04-01218-CR, 05-04-01219-CR, 2005 WL 1950822 (Tex. App. – Dallas August 16, 2005, no pet.)....................................................................44

*Wheeler v. State*, 67 S.W.3d 870 (Tex. Crim. App. 2002) .....................................42

*Wilder v. State*, 111 S.W.3d 249 (Tex. App. – Texarkana 2003, pet. ref'd) ...........42

*Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996) .............................34, 53

*Wilson v. State*, 71 S.W.3d 346 (Tex. Crim. App. 2002) .......................................67

*Wilson v. State*, 819 S.W.2d 662 (Tex. App. – Corpus Christi 1991, pet. ref'd) ....65

*Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004) ..................................26, 37

*Ytuarte v. State*, No. 04-08-00357-CR, 2009 WL 1232327 (Tex. App. – San Antonio May 6, 2009, pet. ref'd) .........................................................................45

## Constitutions

Texas Constitution, Article I, Section 9..................................................................55

Texas Constitution, Article V, Section 12 ...........................................................15

U.S. Constitution, Amendment IV...............................................55, 60, 62, 69

U.S. Constitution, Amendment VI.......................................................................48

U.S. Constitution, Amendment XIV ...................................................................38

## Statutes

Tex. Code Crim. Pro. Art. 2.01............................................................................40

Tex. Code Crim. Pro. Art. 21.03..........................................................................13

Tex. Code Crim. Pro. Art. 38.36..................................................................... 45-46

Tex. Code Crim. Pro. Art. 42.12..........................................................................30

Tex. Code Crim. Pro. Art. 38.04.................................................... 12-13, 17, 19

Tex. Code Crim. Pro. Art. 38.05.........................................................25-29, 31-32

Tex. Pen. Code sec. 12.32....................................................................................30

Tex. Pen. Code sec. 19.02....................................................................................30

Tex. Pen. Code sec. 38.04....................................................................................75

Tex. R. App. Pro. 33.1 ...................................................................26, 35, 37, 65

Tex. R. App. Pro. 44.2 ...................................................................32, 52, 61, 71

Tex. R. Evid. 403 ..........................................................................................47, 44

Tex. R. Evid. 404 ..................................................................................... 43-44

## Statement of the Case

Justin Sanders, hereinafter referred to as "Appellant," was convicted by a jury of the felony offenses of Murder in the 102nd Judicial District Court of Bowie County, Texas, the Honorable Bobby Lockhart presiding.

The jury assessed Appellant's punishment at confinement for thirty (30) years in the Institutional Division of the Texas Department of Criminal Justice along with a fine of $5,000, and the Judge sentenced Appellant accordingly.

Appellant then perfected appeal to this Honorable Court. He now appeals the judgment of the trial court on eight points of error.

# Reply to Points of Error

### REPLY TO POINT OF ERROR NUMBER ONE:

The trial court did not err by overruling Appellant's Motion to Quash because the State was not required to allege the elements of the underlying offense in an indictment for felony murder. Furthermore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction.

### REPLY TO POINT OF ERROR NUMBER TWO:

The trial court did not submit a fundamentally defective jury charge. However, the error, if it was error, does not constitute egregious harm.

### REPLY TO POINT OF ERROR NUMBER THREE:

Appellant failed to preserve this claim of error for appellate review. However, the trial court did not violate Article 38.05 by commenting on Appellant's bond revocation during the punishment phase. Furthermore, any error, if it was error, was harmless.

### REPLY TO POINT OF ERROR NUMBER FOUR:

Appellant failed to preserve his due-process claim for appellate review. However, the trial court did not abuse its discretion in denying Appellant's request for a mistrial based on the prosecutors' wearing of "fallen officer" wristbands.

### REPLY TO POINT OF ERROR NUMBER FIVE:

The trial court did not err by allowing the introduction of extraneous offense evidence because it was relevant to show motive, intent, identity and state of mind. Furthermore, any error, if it was error, was harmless.

### REPLY TO POINT OF ERROR NUMBER SIX:

The trial court did not error in overruling Appellant's Motion to Suppress evidence obtained from Defendant's cellular phone when Appellant gave valid consent for the seizure and search of his cellular telephone. In addition to the valid consent, officers also searched pursuant to a valid warrant.

2

REPLY TO POINT OF ERROR NUMBER SEVEN:

Appellant failed to preserve error for appellate review. However, the State's attorneys did not engage in prosecutorial misconduct by rebutting the defense's claim that the witness had a motive or bias to testify. Furthermore, any error, if it was error, is not reversible error.

REPLY TO POINT OF ERROR NUMBER EIGHT:

The State produced legally sufficient evidence to connect Appellant to the murder of Officer William Jason Sprague.

# Summary of the Argument

*The trial court did not err by overruling Appellant's Motion to Quash because the State was not required to allege the elements of the underlying offense in an indictment for felony murder. Furthermore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction.*

Paragraph Two of the indictment properly charged Appellant with felony murder based on the underlying felony offense of Evading Arrest or Detention. Because the State is not required to allege the elements of an underlying felony offense in an indictment charging felony murder, the indictment sufficiently provided notice to Appellant. Furthermore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction because the language of the indictment was sufficient to raise Evading Arrest or Detention to a felony. The indictment as a whole charges Appellant with enough clarity and specificity to identify the penal statute under which the State intended to prosecute.

*The trial court did not submit a fundamentally defective jury charge. However, the error, if it was error, does not constitute egregious harm.*

The jury charge did not allow the jury to convict Appellant based on an unindicted offense. Based on the charged offense and the evidence presented at

4

trial, the trial court properly instructed the jury on the law of felony evading arrest or detention. Additionally, Appellant has failed to demonstrate that he suffered any actual harm. Appellant was not deprived of adequate notice in which to prepare a defense. Accordingly, the error, if any, is harmless error.

REPLY TO POINT OF ERROR NUMBER THREE:

*Appellant failed to preserve this claim of error for appellate review. However, the trial court did not violate Article 38.05 by commenting on Appellant's bond revocation during the punishment phase. Furthermore, any error, if it was error, was harmless.*

Because Appellant failed to object at the first available opportunity and to request an instruction to disregard, this claim of error is waived. However, the trial court did not violate Article 38.05 because the decision to revoke Appellant's bond was within the sound discretion of the trial court. Considering the nature of the offense for which Appellant had been convicted and the applicable punishment range, the record supports the trial court's decision to revoke Appellant's bond. Furthermore, any error in revoking Appellant's bond in the presence of the jury was harmless. Similar evidence was admitted at trial, the trial judge instructed the jury not to consider his rulings as comments on the weight of the evidence, and the comments were not emphasized by the State. This Court has fair assurance that the trial court's ruling, if error, did not have a substantial and injurious effect or

influence in determining the jury's verdict. Accordingly, the error, if any, is harmless error.

### REPLY TO POINT OF ERROR NUMBER FOUR:

*Appellant failed to preserve his due-process claim for appellate review. However, the trial court did not abuse its discretion in denying Appellant's request for a mistrial based on the prosecutors' wearing of "fallen officer" wristbands.*

Because Appellant failed to request an instruction to disregard, Appellant's due-process claim is waived. Additionally, Appellant's objection at trial does not comport with the claim of error on appeal. Even if Appellant properly preserved this claim for appellate review, the trial court did not abuse its discretion in overruling Appellant's request for a mistrial. The wristbands were not so inherently prejudicial as to pose an unacceptable threat to Appellant's right to a fair trial, therefore, Appellant's due process rights were not violated.

### REPLY TO POINT OF ERROR NUMBER FIVE:

*The trial court did not err by allowing the introduction of extraneous offense evidence because it was relevant to show motive, intent, identity and state of mind. Furthermore, any error, if it was error, was harmless.*

The trial court did not abuse its discretion by allowing evidence of Appellant's drug activities and transactions. Such evidence was relevant to show

6

intent to strike the officer with his motor vehicle and/or intent or motive to evade arrest or detention. Furthermore, any error in admitting this evidence was harmless. Similar evidence was admitted at trial. In light of the trial court's limiting instruction and the substantial evidence of Appellant's guilt, this Court has fair assurance that the admission of the complained-of evidence, if error, did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the error, if any, is harmless error.

REPLY TO POINT OF ERROR NUMBER SIX:

*The trial court did not error in overruling Appellant's Motion to Suppress evidence obtained from Defendant's cellular phone when Appellant gave valid consent for the seizure and search of his phone.*

The trial court did not err in overruling Appellant's Motion to Suppress evidence obtained from the search of his cellular phone. The detectives obtained the phone and consent to search it in a lawful manner. Although Appellant gave consent, the cellular phone was searched pursuant to a valid search warrant. Furthermore, the phone was seized incident to a lawful arrest. Thus, was valid and, as a result, any evidence was lawfully discovered. However, any error in admitting evidence recovered from the phone did not contribute to the Appellant's conviction beyond a reasonable doubt and was therefore harmless.

7

*Appellant failed to preserve error for appellate review. However, the State's attorneys did not engage in prosecutorial misconduct by rebutting the defense's claim that the witness had a motive or bias to testify. Furthermore, any error, if it was error, is not reversible error.*

Appellant waived his claim of prosecutorial misconduct by failing to make a specific objection and requesting an instruction to disregard. The *Rogers* exception to preservation does not apply because the record does not support a finding that the prosecutors acted in bad faith or intended to inflame the jury. Thus, he has waived any alleged error. Nevertheless, the State questioned the witness about threats he had received to rebut the evidence of bias or motive elicited during defense counsel's cross-examination of the witness as permitted by Rule 613(b) of the Texas Rules of Evidence. Furthermore, assuming arguendo that the prosecutors engaged in prosecutorial misconduct, the State's redirect-examination of the witness did not constitute reversible error. The question was not harmful to Appellant and was not of such a character so as to suggest the impermissibility of withdrawing the impression produced. Accordingly, the error, if any, is harmless.

REPLY TO POINT OF ERROR NUMBER EIGHT:

*The State produced legally sufficient evidence to connect Appellant to the murder of Officer William Jason Sprague.*

Appellant's conviction for felony murder is supported by legally sufficient evidence. This evidence came directly from Appellant and several eyewitnesses. In addition, the eyewitness testimony was corroborated by medical, physical and circumstantial evidence. Therefore, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## Argument

## <u>Reply to Point of Error Number One</u>

*The trial court did not err by overruling Appellant's Motion to Quash because the State was not required to allege the elements of the underlying offense in an indictment for felony murder. Furthermore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction.*

### Argument and Authorities

### A. Standard of Review

The sufficiency of an indictment is a question of law.[1]  Therefore, a trial court's decision whether or not to quash an indictment is reviewed under a *de novo* standard.[2]  The charging instrument must convey sufficient notice to allow the accused to prepare his defense.[3]  A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant notice of the acts he allegedly committed.[4]

### B. Application of Law to Facts

In his first point of error, Appellant asserts that the trial court erred in failing to grant Appellant's motion to quash the indictment.  Appellant argued in a pretrial hearing that the indictment lacked specificity in regard to the second paragraph charging Appellant with Felony Murder based on the underlying felony offense of

---

[1] *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).
[2] *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).
[3] *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).
[4] *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988).

Evading Arrest or Detention. Appellant argued that he had insufficient notice to know the nature of the charged offense. Secondarily, Appellant argues that the indictment was insufficient to vest the trial court with subject-matter jurisdiction.

1. Sufficient Notice

In the face of a timely motion to quash, the indictment must allege on its face the facts necessary to show that an offense was committed, to bar subsequent prosecution for the same offense, and to give the defendant notice of the offense with which he is charged.[5] "The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to give notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the state."[6] The indictment will be read as a whole in determining whether it sufficiently charges an offense.[7]

Here, the indictment charged Appellant with committing the offense of Felony Murder with the underlying felony offense of Evading Arrest or Detention. The second paragraph of the indictment reads:

> [Appellant] heretofore on or about June 14, 2013, did then and there, intentionally commit or attempt to commit a felony offense, to-wit: Evading Arrest or Detention, and while in the course of and in furtherance of the commission or attempt of said offense did then and there commit or attempt to commit an act clearly dangerous to human

---

[5] *Id.*

[6] *Id.* (quoting *Smith v. State*, 502 S.W.2d 133 (Tex. Crim. App. 1973); *Cameron v. State*, 401 S.W.2d 809 (Tex. Crim. App. 1966) (emphasis in original)).

[7] *Id.*

life, namely, striking Officer William Jason Sprague with a motor vehicle, which caused the death of Officer William Jason Sprague. (C.R. Vol. II, p. 77).

The indictment was handed down on December 19, 2013. (C.R. Vol. II, p. 29, 77). Appellant filed a motion to quash the indictment on March 18, 2014 – six days prior to trial. (C.R. Vol. II, p. 90). Although the indictment was sufficient to give Appellant notice even in the face of a timely motion to quash, the State offered to amend the indictment[8] to add the additional language requested by the defense. (R.R. Vol. VII, p. 24-25). Appellant objected to any amendment to the indictment. (R.R. Vol. VII, p. 21-22). Appellant now argues that his conviction should be reversed because the indictment failed to provide notice of the underlying felony offense of Evading Arrest or Detention.

Appellant argues that the indictment failed to allege an underlying predicate felony. In his brief and during the hearing on the motion to quash the indictment, Appellant averred that the timely filed motion to quash required to state to specify which subsection of Penal Code sec. 38.04 the State was using to elevate the offense of Evading Arrest or Detention to a felony. (R.R. Vol. XII, p. 21, 25-26). However, Appellant cites no authority, nor has the State found any, which would require the State to allege the elements of the underlying felony in a charge of felony murder even in the face of a timely motion to quash the indictment.

---

[8] *Id*. (When a motion to quash the indictment has been presented, the State may properly amend the indictment to reflect the requested information.).

Appellant claimed during the hearing on the motion to quash that the State's indictment was deficient because "use of a motor vehicle" was not alleged in Paragraph Two of the indictment. (R.R. Vol. XII, p. 21). However, "use of a motor vehicle" is an element to the offense of Evading Arrest or Detention.[9] As a general rule, any element that must be proved should be stated in the indictment.[10] However, it is well-established that an indictment that charges one offense during the commission of another crime need not allege the elements of the underlying offense.[11] An indictment for felony murder is not required to allege the constituent elements of the underlying felony.[12] Given that the State need not allege elements of the underlying offense in an indictment for felony murder, Paragraph Two of the indictment was sufficient to provide Appellant notice even in the face of a timely motion to quash.

Additionally, the indictment as a whole made clear that the State was proceeding on a theory of felony Evading Arrest or Detention (with a Motor Vehicle) under Penal Code sec. 38.04 (b)(2)(A). The indictment charged Appellant with committing the underlying "felony offense" of "Evading Arrest or

---

[9] *Calton v. State*, 132 S.W.3d 29, 32-33 (Tex. App. – Fort Worth 2004, pet. ref'd).
[10] *See* Tex. Code Crim. Pro. Art. 21.03; *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex. Crim. App. 1995).
[11] *Jordan v. State*, 1 S.W.3d 153, 158 (Tex. Crim. App. 1999)(citing *Tompkins v. State*, 774 S.W.2d 195, 206 (Tex. Crim. App. 1987), *aff'd by an equally divided court*, 490 U.S.74 (1989) (per curium)); *Hammett v. State*, 578 S.W.2d 699, 708 (Tex. Crim. App. 1979)(trial court did not err by refusing to grant motion to quash capital murder indictment which did not allege elements of underlying felony offense of robbery).
[12] *Thompkins*, 774 S.W.2d at 206.

Detention." This language put Appellant on notice that the State was proceeding on one of the theories of felony Evading Arrest or Detention rather than misdemeanor Evading Arrest or Detention. The indictment also alleged that Appellant caused the death of the victim "by striking Officer William Jason Sprague with a motor vehicle." This language charged Appellant with using a motor vehicle during the commission of the offense and causing death. In looking at the indictment as a whole, it is clear that the State charged Appellant with committing the underlying felony offense of Evading Arrest or Detention. The language concerning Appellant's conduct was not so vague or indefinite as to deny Appellant notice of the offense in which he was being charged. Therefore, the indictment was sufficient to provide Appellant with enough notice to anticipate the State's evidence, prepare a proper defense, and bar subsequent prosecution. The trial court did not err in denying Appellant's motion to quash the indictment.

2. Subject Matter Jurisdiction

Appellant also complains that the indictment was insufficient to vest the trial court with subject-matter jurisdiction. In his brief, Appellant does not argue that the indictment fails to allege Felony Murder, the charged offense. However, Appellant avers that Paragraph Two of the indictment did not allege with enough specificity the underlying felony of Evading Arrest or Detention.

14

Article V, Section 12 of the Texas Constitution defines an indictment as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." The presentment of an indictment invests the trial court with jurisdiction over the cause.[13] However, an indictment which meets the definition of Article v, Section 12 is sufficient to vest the trial court with jurisdiction even if the indictment is defective. The omission of an element does not prevent the instrument from being an indictment.[14] The Texas Court of Criminal Appeals held in *Studer v. State* that "the language of Art. V, § 12, 'charging a person with the commission of an offense,' does not mean, that each element of the offense must be alleged in order to have an indictment or information as contemplated by Art. V, § 12."[15] "[A] written instrument is an indictment or information under the Texas Constitution if it accuses someone with a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective."[16] If the indictment is sufficient to identify the penal statute under which the State intends to prosecute, the error is not a "fundamental" error.[17]

Appellant contends that Paragraph Two of the indictment is insufficient to vest the trial court with subject-matter jurisdiction because it fails to allege the

---

[13] Texas Constitution, Article V, Section 12.
[14] *Mantooth v. State*, 269 S.W.3d 68, 72 (Tex. App. – Texarkana 2008, no pet.)
[15] *Id*. (quoting *Studer v. State*, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990)).
[16] *Id*. (quoting *Duron v. State*, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997)).
[17] *Id*.

15

elements of felony Evading Arrest or Detention as the underlying felony for Felony Murder. Contrary to Appellant's contentions, the indictment as a whole charges Appellant with enough clarity and specificity to identify the penal statute under which the State intended to prosecute.

Much like the instant case, the defendant in *Teal v. State* argued his indictment failed to charge a felony.[18] The defendant was charged with Hindering Apprehension, and he argued that his indictment failed to allege an element to elevate the offense from a misdemeanor to a felony.[19] Specifically, the defendant argued his indictment did not allege "that [defendant] had knowledge of Curtis Brown's *felony* fugitive status."[20] The indictment alleged the defendant "with intent to hinder the arrest, prosecution, or punishment of Curtis Brown for the offense of Failure to Comply with Registration as a Sex Offender" – a felony offense.[21] The state argued that the language of the indictment "clearly indicates [the state's] intent to prosecute the defendant for the felony offense of Hindering Apprehension."[22] The Court of Criminal Appeals agreed and held that the indictment as a whole can be read as charging the defendant with the felony offense of Hindering Apprehension.[23] Thus, the indictment, although missing an

---

[18] *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 182.

16

element of the offense, charged the defendant with enough specificity to vest the trial court with subject-matter jurisdiction and give the defendant notice that the state intended to prosecute him for a felony.[24]

Here, the indictment charges Appellant with the underlying "felony offense" of "Evading Arrest or Detention" and "caus[ing] the death" of Officer William Jason Sprague by "striking Officer William Jason Sprague with a motor vehicle..." Much like the indictment in *Teal*, the indictment as a whole clearly charges Appellant with committing the underlying felony offense of Evading Arrest or Detention. The face of the indictment accuses Appellant with a crime with enough clarity and specificity to identify the specific penal statue under which the state intends to prosecute – Felony Murder under Penal Code § 19.01(b). Additionally, the allegation specifically alleges the underlying felony of Evading Arrest or Detention under Penal Code § 38.04. Therefore, the indictment was sufficient to vest the trial court with subject-matter jurisdiction.

As previously stated in Reply to Point of Error Number One Part B(1), an indictment for felony murder need not allege the elements of the underlying felony. Thus, an indictment of felony urder is not fundamentally defective if it does not charge all of the elements of the underlying felony.[25] Given that "use of a motor

---

[24] *Id.*
[25] See *Dittman v. State*, No. 05-11-00345-CR, 2012 WL 3139873, * 4 (Tex. App. – Dallas August 3, 2012, pet. ref'd) (not designated for publication) (citing *McGuire v. State*, No. 01-11-

17

vehicle" is an element to the offense of Evading Arrest or Detention, Paragraph

Two of the indictment was not fundamentally defective.  Therefore, the indictment

was sufficient to vest the trial court with subject-matter jurisdiction.

For these reasons, Appellant's first point of error should be overruled.


## Reply to Point of Error Number Two

*The trial court did not submit a fundamentally defective jury charge. However, the error, if it was error, does not constitute egregious harm.*

### Argument and Authorities

**A. Standard of Review**

Appellate review of a purported error in the jury charge involves a two-step

process. [26] First, the reviewing court must determine whether the jury instruction is

erroneous.[27]  Second, if error occurred, an appellate court must analyze that error

for harm.[28]

**B. Application of Law to Facts**

Appellant argues that the trial court omitted an essential element of the

underlying offense of Evading Arrest or Detention in the jury charge.  Appellant

---

01089-CR, 2012 WL 344952, at * 3 (Tex. App. – Houston [1st Dist.] February 2, 1012, pet. ref'd)(not designated for publication)).

[26] *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

[27] *Middleton*, 125 S.W. at 453.

[28] *Id*.

cites Justice P.J. Keller's concurring opinion in *Teal v. State* to support his position that the court's charge was fundamentally defective. Justice Keller noted that an indictment free of defect could lead to charging error when the jury charge allows a jury to render judgment on an offense not authorized by the indictment.[29] For example, a jury charge allowing the jury to convict a defendant for aggravated robbery when the indictment only alleges robbery, even if the indictment was without defect, is erroneous.[30] That is not the case here.

In his brief, Appellant again argues that the indictment failed to provide notice of the charged offense and also failed to allege facts sufficient to elevate an otherwise misdemeanor offense to felony status. Because the application paragraph of the jury charged tracked the language of the indictment, Appellant avers that the jury was allowed to convict him of offense for which he was not charged. However, as discussed in Reply to Point of Error Number One, an indictment for felony murder need not allege the elements of the underlying felony offense. The indictment was also sufficient to provide Appellant notice of the offense he was alleged to have committed, felony murder with the underlying felony offense of Evading Arrest or Detention.

Section 38.04 of the Penal Code provides several scenarios in which this otherwise misdemeanor offense would elevate to a felony. Appellant argues that

---

[29] *Teal*, 230 S.W.3d at 184.
[30] *Id*.

19

the State was required to plead in the indictment its theory of felony Evading or Arrest or Detention. However, this additional language is not required in a felony murder indictment. The Amarillo Court of Appeals was faced with a similar situation in *Kitchens v. State*.[31] The defendant argued that the state was required to plead in a capital murder indictment the theory of burglary, the underlying felony offense, it intended to prove.[32] Without requiring the state to plead its theory of the underlying felony offense, the defendant argued that he had insufficient notice to properly prepare a defense.[33] Considering that the state is not required to plead the elements of an underlying felony, the Court held that the indictment was sufficient even if it required the defendant to prepare a defense based on multiple theories of the underlying felony.[34]

In *Kitchens*, the defendant also argued that the jury charge was fundamentally defective for submitting the definition of burglary with intent to commit assault and thereby allowing the jury to convict him on a theory of burglary not alleged in the indictment.[35] In holding that the charge neither required nor permitted proof different from that required by the indictment, the Court reasoned:

---

[31] *Kitchens v. State*, 279 S.w.3d 733 (Tex. App. – Amarillo 2007, pet. ref'd).
[32] *Id*. at 735.
[33] *Id*. at 736.
[34] *Id*.
[35] *Id*.

The indictment requires proof of murder intentionally committed "in the course of committing or attempting to commit the offense of burglary…" In order to understand the concept of burglary, the jury was entitled to a statutorily correct definition of burglary. Because the indictment need not allege the specific theory of burglary relied upon by the prosecution, the trial court was limited, not by any specific allegation, but by the evidence. The evidence introduced in the cause supported the State's theory that [defendant] entered the [victim's] residence without consent and committed or attempted to commit the offense of assault.[36]

If the law allows the State to submit an indictment without pleading the elements of the underlying offense, then it cannot be argued that a jury charge based on such an indictment is fundamentally defective. Requiring otherwise would invite error.

Here, the felony murder indictment required proof that Appellant caused the death of Officer William Jason Sprague while in the course of committing the felony offense of Evading Arrest or Detention (or Aggravated Assault on a Public Servant as alleged in Paragraph One). Testimony and evidence produced at trial showed that Appellant was operating a motor vehicle when he struck and caused the death of Officer Sprague while committing either Evading Arrest or Detention or Aggravated Assault on a Public Servant. Based on the evidence, the trial court informed the jury that Evading Arrest or Detentions is a felony "if the actor uses a vehicle in flight or another person suffers serious bodily injury…" (R.R. Vol. XIII, p. 8). Furthermore, Appellant was provided notice of the State's theory of felony Evading Arrest or Detention in the indictment based on the language "striking

---

[36] *Id*. at 737.

21

Officer William Jason Sprague with a motor vehicle, which cause the death of Officer William Jason Sprague." Although the indictment was not required to plead the elements or theory of the underlying felony offense, the indictment in this cause provided Appellant with sufficient notice to prepare a defense.

Because the State was not required to plead the elements of the underlying felony, the trial court did not submit a fundamentally defective charge to the jury.

## C. Harm Analysis

The degree of harm required for reversal depends on whether the error was preserved in the trial court.[37] Here, Appellant concedes in his brief that he did not object to the jury charge at trial. When an alleged error is raised for the first time on appeal, a defendant must show that the harm resulting from the error was egregious – the error was so harmful that the defendant was denied a fair and impartial trial.[38]

In determining whether a defendant was deprived of a fair and impartial trial, an appellate court reviews the entire jury charge, the state of the evidence, including any contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole.[39] Errors which result in egregious harm are those that affect the very basis

---

[37] *Id.*
[38] *Alamanza v. State*, 686 S.w.2d 157, 171 (Tex. Crim. App. 1984).
[39] *Id.*

of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive.[40] The purpose of this review is to illuminate any actual, not merely theoretical, harm to the defendant.[41]

A review of the charge itself reveals no error. However, Appellant claims that the jury charge error, if it was error, caused egregious harm and cites *Trejo v. State* to support his position.[42] In *Trejo*, the defendant alleged error in the trial court's submission of aggravated assault as a lesser-included offense although he was indicted for aggravated sexual assault.[43] Because aggravated assault was not a lesser-included offense of aggravated sexual assault in this instance, the Court held the trial court erred in submitting the charge to the jury and caused the defendant egregious harm because the jury was allowed to convict the defendant bases on an uncharged offense.[44] The instant case does not parallel *Trejo* as Appellant suggests. Appellant does not allege that the trail court erroneously submitted a lesser-included offense to the jury. Additionally, the court's charge did not allow the jury to convict Appellant for an unindicted offense. Consequently, Appellant has not suffered egregious harm.

---

[40] *Id* at 172.
[41] *Id* at 174.
[42] *Trejo v. State*, 313 S.W.3d 870 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd).
[43] *Id*. at 871.
[44] *Id*. at 872, 874.

As fully discussed in Reply to Point of Error Number Eight, the evidence submitted at trial was legally sufficient to support Appellant's conviction for felony murder under both Paragraph One and Paragraph Two of the indictment. Appellant argues that the indictment's insufficient notice prevented him from preparing an adequate defense. However, the indictment sufficiently placed Appellant on notice of the charged offense and allowed him to prepare a defense. From opening statement to closing argument, Appellant strenuously defended against the allegations in Paragraph Two. Appellant argued that Officer Sprague was not attempting to detain Appellant but merely directing traffic. (R.R. Vol. IX, p. 16, 17-18; Vol. XIII, p. 46). Because he was convicted of an indicted offense, the evidence at trial support the jury's verdict of guilty and Appellant presented an adequate defense, no harm can be shown based on an alleged lack of notice.

The arguments of counsel also do not weigh in favor of a finding of egregious harm. The State argued Appellant intentionally struck the officer with a motor vehicle in an attempt to commit aggravated assault on a public servant. Alternatively, the State argued Appellant was attempting to evade arrest or detention when he ran over Officer Sprague. Both scenarios were sufficiently plead in the indictment; therefore, the State did not ask the jury to convict Appellant of an unindicted offense.

24

In reviewing the entire jury charge, the trial court correctly set forth the elements of the offense and properly charged the jury on the law of the case. Appellant has failed to establish that he has suffered any actual harm by the trial court's jury instructions. As such, Appellant was not denied a fair and impartial trail and was, therefore, not egregiously harmed.

For these reasons, Appellant's second point of error should be overruled.

## Reply to Point of Error Number Three

*Appellant failed to preserve this claim of error for appellate review. However, the trial court did not violate Article 38.05 by commenting on Appellant's bond revocation during the punishment phase. Furthermore, any error, if it was error, was harmless.*

### Argument and Authorities

**A. Preservation of Error**

To properly preserve error with regard to evidence for appellate review, a defendant must have made a timely request, objection, or motion, with sufficient specificity to make the trial court aware of the nature of the complaint and secure a ruling.[45] The contemporaneous objection requirement encompasses improper comments by the trial court on the weight of the evidence.[46] Therefore, failure to timely object to the trial court's comments on the weight of the evidence waives a

---

[45] Tex. R. App. Pro. 33.1(a); *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009).
[46] *Mestiza v. State*, 923 S.W.2d 720, 724 (Tex. App. – Corpus Christi 1996, no pet.).

claim of error on appeal.[47] As a general rule, appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court.[48] Furthermore, the objection raised on appeal must be the same as the objection raised at trial.[49] Where a trial objection does not comport with the issue raised on appeal, error is not preserved for review and is waived.[50]

To preserve for appellate review a claim that the trial court violated Article 38.05 of the Texas Code of Criminal Procedure, the complaining party must timely object at trial that the comments violated Article 38.05.[51] In addition, a party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction.[52] A party's failure to timely object generally waives all error unless the statement is so prejudicial that no instruction could have cured the harm.[53] Generally, an

---

[47] See *Havard v. State*, 800 S.W.2d 195, 211 (Tex. Crim. App. 1989).
[48] *Rogers v. State*, 640 S.W.2d 248, 264 (Tex. Crim. App. 1982).
[49] *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 828 (2000); *Brasfield v. State*, 30 S.W.3d 502, 505 (Tex. App. –Texarkana 2000, no pet.).
[50] *Ibarra*, 11 S.W.3d at 197; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1171 (1997); *Brasfield*, 30 S.W.3d at 505.
[51] *See* Tex. R. App. Pro. 33.1; *Resendez v. State*, 160 S.W.3d 181, 189-90 (Tex. App. – Corpus Christi 2005, no pet.)(en banc).
[52] *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)(en banc).
[53] *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App. - Austin 2008, pet. ref'd)(holding appellant failed to preserve for appellate review claim that trial court improperly commented on the weight of the evidence where defense counsel requested mistrial but failed to timely object or request an instruction to disregard).

instruction by the trial court to the jury to disregard any comments made by the court is sufficient to cure any error arising from its statements.[54]

In this case, Appellant neither timely objected to the trial court's comments nor requested an instruction to disregard the comments in question before moving for a mistrial. After the jury rendered a verdict of guilty, the trial court indicated to defense counsel that he was considering revoking Appellant's bond and requested argument from counsel. (R.R. Vol. XIII, p. 112-13). Defense counsel stated that he wanted to argue against a bond revocation outside the jury's presence. (R.R. Vol. XIII, p. 113). The trial court then dismissed the jury and heard argument from defense counsel. (R.R. Vol. XIII, p. 113-14). After the trial court denied Appellant's request to remain on bond pending sentencing, defense counsel requested a mistrial without first making an objection or requesting an instruction to disregard. (R.R. Vo. XIII, p. 114.) The trial court's statement was not so prejudicial, if it was prejudicial, that it could not have been cured by an instruction. Therefore, Appellant has waived his claim that the trial court violated Article 38.05 because he failed to make a timely objection to the trial court's comments or request a jury instruction to disregard.

## B. Application of Law to Facts

---

[54] *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981); *Peavey*, 248 S.W.3d at 470; *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App. – San Antonio 2001, pet. ref'd).

Rather than arguing that the trial court erred in overruling his motion for a mistrial, Appellant bases his appeal on the trial court's alleged violation of Article 38.05 of the Texas Code of Criminal Procedure. Specifically, Appellant argues that the trial court violated Article 38.05 by revoking Appellant's bond in the presence of the jury.

Article 38.05 of the Code of Criminal Procedure provides that the trial court shall refrain from commenting on the weight of the evidence in the jury's presence during any stage of the proceedings. To constitute reversible error, the comment of the judge must be material to the case and be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights.[55] An issue is material if the jury had the same issue before it.[56]

After the jury found Appellant guilty of felony murder, the trial court addressed defense counsel in the presence of the jury concerning Appellant's bond. The trial court stated:

> Will, I don't think I told you this, but I had pretty well made up my mind early in the trial that if they found him guilty of that offense, I was going to revoke his bond and hold him overnight. And I had the bailiff basically check with the sheriff's office to make sure we can do that here, and I think that's what I'm going to do. Do you have anything you'd like to say?

---

[55] *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983); *Burge v. State*, 443 S.W.2d 720, 724 (Tex. Crim. App. 1969), *cert. denied*, 396 U.S. 934 (1969).
[56] See *Jackson v. State*, 548 S.W.2d 685, 695 (Tex. Crim. App. 1977).

28

(R.R. Vol. XIII, p. 112). The jury was subsequently asked to assess Appellant's punishment. Appellant argues that this comment expressed an opinion that Appellant had not accepted responsibility and demonstrated the trial court's view of Appellant as a continuing threat to the community and a flight risk. However, Appellant cites no authority to support his position that the trial court impermissibly commented on the weight of the evidence in violation of Article 38.05.

The circumstances of the instant case, although not as severe, is most analogous to a defendant wearing shackles in the presence of the jury.[57] In *Marquez v. State*, the Court of Criminal Appeals determined that a trial court did not violate Article 38.05 by requiring the defendant to wear restraints during the punishment phase of trial.[58] The defendant was convicted of capital murder, and the jury was to determine the special issue of future dangerousness – an issue material to the case.[59] Requiring a defendant to wear handcuffs or shackles during a criminal trial is within the discretion of the trial court.[60] In addition to threatening to take his own life and destroying property while being escorted into the courtroom, the defendant was convicted by the jury of capital murder and had a

---

[57] At no time was Appellant required to wear handcuffs or shackles in the presence of the jury. (R.R. Vol. XIII, p. 115-16).

[58] *Marquez v. State*, 725 S.W.2d 217, 230 (Tex. Crim. App. 1987), overruled on other grounds by *Moody v. State*, 827 S.w.2d 875, 892 (Tex. Crim. App. 1992).

[59] *Id*. at 227.

[60] *Id*.

29

history of evading law enforcement.[61]  The Court reasoned that the record demonstrated "a good and sufficient reason" to restrain the defendant during the punishment phase.[62]

Here, the record similarly demonstrated adequate cause for the trial court to revoke Appellant's bond after the jury found Appellant guilty of felony murder. First, Appellant was convicted of an offense in which he was not eligible for community supervision.[63]  Appellant's punishment range included the possibility of imprisonment for life and up to a $10,000 fine.[64]  Next, the testimony presented during the guilt/innocence phase showed that Appellant was evading arrest or detention when he took the life of a law enforcement officer.  Alternatively, Appellant intentionally or knowingly committed the offense of aggravated assault on a public servant.  Considering the violent nature of the offense and Appellant's history of fleeing from law enforcement, the revocation of Appellant's bond was necessary to secure Appellant's presence during the punishment phase of trial. Unlike the jury in *Marquez*, this jury was not tasked with determining the special issue of whether or not Appellant posed a future danger.  Therefore, the issue of Appellant's future dangerousness was not material to the case.  Finally, the trial was moved from Bowie County to Rockwall County.  This placed the trial court

---

[61] *Id*. at 228-29.
[62] *Id*. at 230.
[63] Tex. Code Crim. Pro. Art. 42.12, § 4(d)(8).
[64] Tex. Pen. Code sec. 12.32; Tex. Pen. Code sec. 19.02(c).

30

and local law enforcement at a disadvantage in apprehending Appellant if he were to flee. Given that the revocation of Appellant's bond was supported by the record, the trial court did not violate Article 38.05 by improperly commenting on the weight of the evidence.

Additionally, the comments by the trial court were not reasonably calculated to benefit the State. In *Graham v. State*, reversal resulted because of the trial court's comments before voir dire of the jury, "I think that the evidence will show that [defendant] went to [the victim's] house looking for her daughter and the State's evidence will probably show that [the victim] was killed somewhere during that time…"[65] The Second Court of Appeals found that these remarks were calculated to, and probably did, convey to the jury the court's opinion of the case on a pivotal issue.[66] The question of whether the defendant had been to the victim's home on the day in question was hotly disputed, and the judge's comments gave credence to the State's version of the disputed facts.[67]

Here, the comment made by the trial judge did not rise to the level of those made in *Graham*. Primarily, the comment was not made directly to the jury but to counsel. The Court of Criminal Appeals in *Becknell v. State* reasoned that a trial court's statement was not made directly to the jury in overruling a claim that the

---

[65] *Graham v. State*, 624 S.W.2d 785, 787 (Tex. App. – Fort Worth 1981, no pet.).
[66] *Id*. at 788.
[67] *Id*. at 787.

31

trial court violated Article 38.05.[68]    In addition, whether or not to revoke Appellant's bond was not an issue to be decided by the jury.  Therefore, the trial court's comment was not calculated to benefit the State or prejudice Appellant. The trial court did not error in revoking Appellant's bond in the presence of the jury.

## C. Harmless Error

Assuming arguendo that the trial court erred be revoking Appellant's bond in the jury's presence, such error does not constitute reversible error.  Appellant correctly points out that a violation of Article 38.05 is non-constitutional error.[69] Under Rule 44.2(b), non-constitutional error must be disregarded if it does not affect the appellant's substantial rights.[70]  A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict."[71]  But if the error did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless.  In making a harm analysis, reviewing courts examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.[72]

---

[68] *Becknell v. State*, 720 S.W.2d 526, 523 (Tex. Crim. App. 1986).
[69] *Simon v. State*, 203 S.W.3d 581, 593 (Tex. App. – Houston [14th Dist.] 2006, no pet.).
[70] TEX. R. APP. P. 44.2(b).
[71] *Morales v. State*, 32 S.W.3d 863, 867 (Tex. Crim. App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App. – Fort Worth 2000, pet. ref'd).
[72] *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

In arguing that the trial court committed reversible error, Appellant contends that the evidence of his guilt was not great. However, the comment of the trial court was made after the jury returned of verdict of guilty. Any alleged error would have affected only the punishment phase of trial.

Here, similar testimony was submitted to the jury. Error may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection either before or after the complained-of ruling.[73] Appellant called Taras Summers, a community supervision officer for Bowie County, during the punishment phase. (R.R. Vol. XIV, p. 115). Defense counsel elicited testimony that Appellant was arrested and then placed on supervised bond, house arrest, adn electronic monitoring. (R.R. Vol. XIV, p. 115-17, 123). The jury was also informed during voir dire and the jury charge that Appellant was not eligible for community supervision. (R.R. Vol. VIII, p. 67; Vol. XV, p. 96-97). As such, the jury was aware that Appellant was on bond and would be taken into custody at the time the trial court revoked Appellant's bond. In addition, the trial court's comment was not emphasized or mentioned during argument by either party. Therefore, any impact the trial judge's comments may have had on the jury's punishment deliberations were slight.

---

[73] *Coble*, 330 S.W.3d at 282 (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Additionally, the trial court instructed the jury at the beginning of trial not to consider ruling's as comments on the evidence. Prior to voir dire, the trial court instructed the jury:

> Even I, as the judge, am not permitted to influence your evaluation through words or actions during the trial. My job is to decide the law and to hear evidence and other objections. When I rule on objections, I am not indicating my personal feelings for one side or the other but simply applying the rules of law established by the legislature that govern this trial.

(R.R. Vol. VIII, p. 9). It is presumed that a jury follows instructions given by the trial court.[74] The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions.[75] In this case, Appellant has not offered any evidence to rebut the presumption that the jury followed the trial court's instructions.

Furthermore, there is no evidence in the record that the trial court's comments made to counsel were heard, understood, or considered by the jury during deliberations. In *Becknell v. State*, the Court of Criminal Appeals determined that a comment made during a bench conference but in the jury's presence was not reversible error where "there was no evidence in the record that the jury heard or understood the court's comments, nor any evidence that appellant

---

[74] *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996).
[75] See *Colburn*, 966 S.W.2d at 520.

34

was thereby injured."[76]   The trial judge indicated his intention to revoke Appellant's bond in the presence of the jury, but the comments were directed to defense counsel.  Because the record does not support a conclusion that the jury was influenced by the complained-of statements, any error is harmless.

For these reasons, Appellants third point of error should be overruled.

## Reply to Point of Error Number Four

*Appellant failed to preserve his due-process claim for appellate review.  However, the trial court did not abuse its discretion in denying Appellant's request for a mistrial based on the prosecutors' wearing of "fallen officer" wristbands.*

### Argument and Authorities

**A. Preservation of Error**

"It is well established that, in order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context."[77]   Furthermore, "if a party fails to properly object to constitutional errors at trial, these errors can be forfeited."[78] Texas courts have found "that numerous constitutional rights, including those implicating a defendant's due process rights, may be forfeited for purposes of

---

[76] *Becknell*, 720 S.W.2d at 532.

[77] *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006); citing Tex. R. App. P. 33.1(a)(1)(A).

[78] *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

appellate review unless properly preserved."[79]  In *Belt v. State*, the Second Court of Appeals held that a defendant failed to preserve for appellate review any violation of his due process rights where the defendant did not raise a due process challenge at trial.[80]  Furthermore, the objection raised on appeal must be the same as the objection raised at trial.[81]  Where a trial objection does not comport with the issue raised on appeal, error is not preserved for review and is waived.[82]

On appeal, Appellant argues that the prosecutors' wearing of blue and black wristbands violated his right to due process.  However, Appellant never made a due-process claim in the trial court, and the trial judge was never given an opportunity to rule on the issue.  Appellant merely argued that the wearing of the wristbands was "highly prejudicial and improper."  (R.R. Vol. XI, p. 21-22).  This objection was not sufficient to put the trial court on notice that Appellant was raising a due-process claim.  Because Appellant's trial objection does not comport with his claim of error on appeal, he failed to preserve this argument for appellate review.

Appellant also failed to request a limiting instruction prior to moving for a mistrial.  A party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an

---

[79] *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009).
[80] *Belt v. State*, 127 S.W.3d 277, 282 (Tex. App. – Fort Worth 2004, no pet.).
[81] *Ibarra,* 11 S.W.3d at 197; *Brasfield*, 30 S.W.3d at 505.
[82] *Ibarra*, 11 S.W.3d at 197; *Goff*, 931 S.W.2d at 551; *Brasfield*, 30 S.W.3d at 505.

instruction.[83]   The wearing of wristbands was not so prejudicial, if it was prejudicial, that it could not have been cured by a timely instruction from the trial court.  As such, Appellant has waived appellate review of this issue.

## B. Standard of Review

Appellant objected to the wearing of wristbands by the prosecutors during trial and requested a mistrial. (R.R. Vol. XI, p. 24). The trial court sustained Appellant's objection but denied his motion for a mistrial.  (R.R. Vol. XI, p. 24). Mistrials are an "extreme remedy" and should only be granted when "an objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant."[84]

A denial of a motion for a mistrial is reviewed for an abuse of discretion.[85] An appellate court must review a trial court's ruling in light of the arguments in front of the trial court at the time of the ruling.[86]  A trial court may not be faulted for arguments not presented prior to ruling on a motion for mistrial.[87]

A defendant must show either actual or inherent prejudice to prevail on a claim of reversible prejudice resulting from external juror influence.[88]   To determine inherent prejudice, appellate courts look to whether "an unacceptable

---

[83] *Young*, 137 S.W.3d at 70.

[84] *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 2013), overruled on other grounds by *Ex Parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007).

[85] *Hollaway v. State*, 446 S.W.3d 847, 855 (Tex. App. – Texarkana 2014, no pet.).

[86] *Weed v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); Tex. R. App. P. 33.1.

[87] *Id*.

[88] *Holbrook v. Flynn*, 475 U.S. 560, 561 (1986).

risk is presented of impermissible factors coming into play."[89]  In order to show

actual prejudice, the jurors must express consciousness of some prejudicial effect.[90]

Inherent prejudice rarely occurs and "is reserved for extreme situations."[91]

## C. Application of Law to Facts

In his fourth point of error, Appellant claims that the prosecutors wore blue

and black wristbands during trial in violation of the Sixth and Fourteenth

Amendments to the United States Constitution.  Specifically, Appellant contends

that the wearing of these wristbands constituted "state sponsored conduct" which

was so inherently prejudicial that it deprived Appellant of a fair trial by injecting

an "unacceptable factor" influencing the jury's verdict.  Appellant cites *Holbrook*

*v. Flynn* to support his position that reversal is required unless an essential state

interest justified the wearing of wristbands.  However, the United States Supreme

Court in *Flynn* determined that seating up to eight uniformed officers behind the

defendant at trial "was not so inherently prejudicial that [the defendant] was

thereby denied his constitutional right to a fair trial."[92]  The Court reasoned the

"presence of guards in a courtroom during trial is not the sort of inherently

prejudicial practice that should be permitted only where justified by an essential

---

[89] *Id*. (citing *Estelle v. Williams*, 425 U.S. 501, 505 (1976)).

[90] *Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996), overruled on other grounds by *Easley v. State*, 424 S.W.3d 353 (Tex. Crim. App. 2014).

[91] *Id*. citing *Bundy v. Duggar*, 850 F2d 1402, 1424 (11th Cir. 1988), cert. denied, 488 U.S.1034 (1989).

[92] *Flynn*, 475 U.S. at 560.

state interest."[93] Appellant has failed to show the existence of such inherent prejudice.

Here, the wearing of wristbands was not so inherently prejudicial to require a showing of an essential state interest, and it did not pose an unacceptable threat to Appellant's right to a fair trial. Both prosecutors wore blue and black rubber bands printed with the victim's name and date of death. (Record Exhibit 9). The wristbands did not pose an unacceptable threat because this information, the victim's name and date of death, was elicited during Appellant's murder trial. Defense counsel noted that courtroom spectators were wearing similar wristbands, but no objection was made. (R.R. Vol. XI, p. 22). In regard to the prosecutors' wristbands, defense counsel objected not to the words but to the colors of the bands and argued that blue and black were associated with fallen officers. (R.R. Vol. XI, p. 23). However, it is neither inherently prejudicial nor unacceptably threatening for the State's attorneys to wear certain colors during trial. The wearing of blue and black wristbands is not an impermissible factor coming into play before the jury warranting a mistrial or reversal.

Additionally, the record does not support a conclusion that the jury viewed or were influenced by the wristbands. Defense counsel did not notice the bands

---

[93] *Id.*

until the fourth day of trial.  (R.R. Vol. XI, p. 22-23).  Similarly, the trial judge stated:

> I've watched how [the prosecutors] both pull rubber bands off their wrists to put around photographs … I thought they were rubber bands. And you can't tell what they are.  You can't see any of the writing.  I mean, they've been right here two feet in front of me numerous times since Sunday and Monday.  I didn't notice them.

(R.R. Vol. XI, p. 23).  In *Nguyen v. State*, the Third Court of Appeals held that the wearing of buttons portraying the victim's photograph by courtroom spectators did not result in external influence on the jury.[94]   The Austin court reasoned that the record did not demonstrate a reasonable probability of influence on the jury's verdict because there was no record of the jury seeing the buttons.[95]   Similarly, there is nothing in the record to support an assertion that the jury viewed these wristbands.

However, even if the jury viewed the prosecutors' wristbands, this supplied no external influence on the jury.  Defense counsel argues that the wristbands conveyed a message about the matter before the jury and suggests that this external influence affected the outcome of the trial.  Prosecutors represent the State of Texas in criminal prosecutions.[96]   In this case, the murder victim was a peace officer acting within the course of his duties.  The prosecutors were advocating for

---

[94] *Nguyen v. State*, 977 S.W.2d 450, 457 (Tex. App. – Austin 1998), aff'd, 1 S.W.3d 694 (Tex. Crim. App. 1999).
[95] *Id.*
[96] Tex. Code Crim. Pro. Art. 2.01.

the jury to convict Appellant for the murder of Officer William Jason Sprague, a fallen officer. The wristbands provided no inference not already supplied by the duty of prosecutors and the presentation of the State's case-in-chief. Wearing of wristbands in no way exerted an external influence on the jury that deprived Appellant of due process.

The wristbands were not so inherently prejudicial as to pose an unacceptable threat to Appellant's right to a fair trial, therefore, Appellant's due process rights were not violated. Furthermore, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial because the wearing of wristbands by the prosecutors did not warrant an extreme remedy.

For these reasons, Appellant's fourth point of error should be overruled.

## Reply to Point of Error Number Five

*The trial court did not err by allowing the introduction of extraneous offense evidence because it was relevant to show intent, motive, identity and state of mind. Furthermore, any error, if it was error, was harmless.*

### Argument and Authorities

**A. Standard of Review**

The trial court has wide discretion in deciding whether to admit or exclude evidence.[97]   When considering whether a trial court's decision to admit or exclude evidence is error, an appellate court must determine whether the trial court abused that discretion.[98]  This inquiry depends on the facts of each case.[99]

When reviewing a trial court's decision to admit or exclude evidence, an appellate court must afford great deference to the trial court's balancing determination and should reverse a trial court "rarely and only after a clear abuse of discretion."[100]   An abuse of discretion occurs only when the trial court acts arbitrarily or unreasonably without reference to any guiding rules or principles.[101] Even if the reviewing court might have reached a different result, the court must uphold the trial court's decision to admit or exclude evidence if it was within the "zone of reasonable disagreement."[102]   A trial court's evidentiary ruling must be upheld if it was correct under any theory of law applicable to the case.[103]

## B. Application of Law to Facts

---

[97] *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990); *Wilder v. State*, 111 S.W.3d 249, 255 (Tex. App. – Texarkana 2003, pet. ref'd).
[98] *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Robinson v. State*, 35 S.W.3d 257, 263 (Tex. App. – Texarkana 2000, pet. ref'd).
[99] *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).
[100] *Robbins v. State*, 88 S.W.3d 256, 262 (Tex. Crim. App. 2002).
[101] *Linciciome v. State*, 3 S.W.3d 644, 646 (Tex. App. – Amarillo 1999, no pet.); *Phelps v. State*, 999 S.W.2d 512, 519 (Tex. App. – Easland 1999, pet. ref'd.).
[102] *Wheeler v. State*, 67 S.W.3d 870, 888 (Tex. Crim. App. 2002); *Weatherred*, 15 S.W.3d at 542.
[103] *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

1. Rule 404(b)

Appellant argues that the trial court erred in admitted evidence of Appellant's drug possession and distribution on the day of the murder. Specifically, Appellant avers that certain text messages recovered from his cellular phone were admitted in violation of Rule 404(b) of the Texas Rules of Evidence. However, the text messages were properly admitted to prove identity, intent, motive and Appellant's state of mind at the time of the offense.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith under Rule 404(b) of the Texas Rules of Evidence. It may, however, be admissible for other purposes, provided the evidence has relevance apart from character conformity.[104] This type of evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[105]

Although the existence of a motive is not essential to a conviction, nevertheless the presence or absence of a motive for a crime is obviously a factor that is related to the question of a defendant's guilt or innocence.[106] Consequently,

---

[104] *See* Tex. R. Evid. 404(b).
[105] *Swarb v. State*, 125 S.W. 3d 672, 680 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd).
[106] *Knox v. State*, 934 S.W. 2d 678, 682 (Tex. Crim. App. 1996).

proof of any existing motive for the offense is generally held admissible.[107]

Evidence of extraneous conduct may be offered to prove motive under Rule 404(b) if the evidence tends to raise an inference that the defendant had a motive to commit the offense.[108] Put another way, such evidence is admissible under Rule 404(b) if "it tends to establish some evidentiary fact, such as motive…, leading inferentially to an elemental fact [such as identity or intent]."[109]

Rule 404(b) permits admission of evidence of extraneous offenses to show motive to evade arrest or detention.[110] Further, in a murder case, Texas law authorizes the admission of evidence of "the previous relationship existing between the accused and the deceased, together with all relevant facts and

---

[107] *Id.*

[108] *Crane v. State*, 786 S.W.2d 338, 349-50 (Tex. Crim. App. 1990).

[109] *Powell v. State*, 63 S.W. 3d 435, 448 (Tex. Crim. App. 2001)(quoting *Montgomery*, 810 S.W. 2d at 387-388.

[110] *See Powell v. State*, 189 S.W. 3d 285, 287-89 (Tex. Crim. App. 2006) (evidence defendant was on parole admissible under Rule 404(b) for purposes of establishing defendant's motive to evade detention and did not violate Rule 403); *Guerra v. State*, No. 07-09-00283-CR, 2010 WL 2816215, at *6 (Tex. App. – Amarillo July 19, 2010, pet. ref'd) (evidence of appellant's prior convictions admissible to show motive to evade and identity); *Britt v. State*, No. 14-06-00131-Cr, 2007 WL 1251490 at *17-18 (Tex. App. Houston [14th Dist.] April 26, 2007, pet. ref'd) (evidence defendant on deferred adjudication community supervision admissible to show appellant's motive and intent to evade arrest); *West v. State*, Nos. 05-04-01218-CR, 05-04-01219-CR, 2005 WL 1950822 at 5 (Tex. App. – Dallas August 16, 2005, no pet.) (evidence of appellant's fraudulent possession of identifying information was relevant under Rule 404(b) to show motive to evade detention); *Vital v. State*, Nos. 02-02-00421-CR, 02-02-00422-CR, 2003 WL 22966375 at *4 (Tex. App. –Fort Worth December 18, 2003, no pet.) (evidence of appellant's prior offense for unauthorized use of motor vehicle was relevant to show that appellant had motive for evading arrest and such relevance was a "legitimate basis for the trial court's ruling").

circumstances to show the condition of the mind of the accused at the time of the offense."[111]

After careful consideration of the applicable law and the facts of the case, the trial court admitted text messages obtained from Appellant's cellular phone revealing that Appellant was conducting drug transactions on the date of the offense. (R.R. Vol. XII, p. 53). Specifically, Appellant was working at his job at the liquor store when he received a text message from Matt Rollins asking about marijuana. (R.R. Vol. XII, p. 61-62). Appellant was also sending out text messages to a female, who was already at the park, asking her if she was going to smoke marijuana and telling her that he wanted to "get her high as shit." (R.R. Vol. XII, p. 60). Appellant told his constituents that he had the marijuana with him at his job. (R.R. Vol. XII, p. 62). He also relayed the quality of the marijuana he had in stock as well as the current price he charged for the product. (R.R. Vol. XII, p. 61). The testimony at trial was that Sanders was under the influence of marijuana at the park and that his vehicle smelled of marijuana the day following the murder. (R.R. Vol. X, p. 7-8; R.R. Vol. XI, p. 8-10, 171-172).

When extraneous offense evidence is admitted, "the determinative issue is whether the extraneous offense has relevance apart from character conformity."[112]

[111] Tex. Code Crim. P. art. 38.36(a).
[112] *Ytuarte v. State*, No. 04-08-00357-CR, 2009 WL 1232327 at *3 (Tex. App. – San Antonio May 6, 2009, pet. ref'd)(citing *Bass v. State*, 270 S.W.3d 557, 563 n.8 (Tex. Crim. App. 2008).

Here, the defense was that Appellant did not run over and kill the police officer. (R.R. Vol. IX, p. 20). Thus, the issue of identity was also before the jury. The State's theory at trial was that Appellant was both in possession of and under the influence of marijuana. Thus, the State argued, once Appellant observed the officer attempt to detain him, he jumped the curb to either: 1) evade detention (and certain arrest) and/or 2) run over the officer to avoid the confrontation. (R.R. Vol. XIII, p. 19).

Evidence that Appellant was conducting drug transactions at the park on the night of the murder was clear proof of his motive and intent to evade detention and/or motive and intent to assault the officer with his vehicle. Additionally, the text messages were relevant to establish identity and rebut Appellant's arguments that he was not responsible for Officer Sprague's death. Furthermore, evidence tending to show the state of mind of the accused at the time of the offense is admissible under Article 38.36 of the Texas Code of Criminal Procedure. Appellant's awareness of his illegal possession of narcotics was relevant to show Appellant's state of mind at the time of the offense. Appellant knew he was being detained and knew he was in possession of illegal narcotics. Therefore, this evidence tends to establish and evidentiary fact – Appellant's intent to evade arrest or detention and/or assault a public servant.

46

Thus, the trial court could have reasonably concluded the extraneous offense evidence had relevance apart from character conformity.

## 2. Rule 403

In the event that this Court finds the trial court did not abuse its discretion in admitting the extraneous offense evidence, Appellant further argues that the probative value of such evidence was outweighed by the prejudicial effect.

In *Powell v. State*, the Texas Court of Criminal Appeals reversed the Waco Court of Appeals' decision in an evading arrest or detention case involving the introduction of extraneous offense evidence used to establish motive because the Waco Court failed to give proper deference to a trial court's ruling under a Rule 403 balancing test.[113] In that decision, the *Powell* Court reiterated the longstanding rule that "although relevant, evidence *may* be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[114] The Court went on to note "[w]e have repeatedly explained that Rule 403's use of the word 'may' reflects the draftsman's intent that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and unfair prejudice on the other, and that he

---

[113] *Powell v. State*, 189 S.W. 3d 285, 289 (Tex. Crim. App. 2006).
[114] *Id* at 288; Tex. R. Evid. 403.

should not be reversed simply because an appellate court believes that it would have decided the matter otherwise."[115]

Courts are to evaluate the evidence in light of the four factors set forth in *Montgomery v. State*.[116] First, the Court should evaluate whether the extraneous offense made a fact of consequence more or less probable.[117] In the instant case, the State offered evidence at trial that Appellant had drugs on him at work, planned to bring drugs to the park and was under the influence of marijuana at or near the time of the offense. (R.R. Vol. XII, p. 53-62, R.R. Vol. XI, p. 171-172). The evidence surrounding the narcotics, at a minimum, tends to raise an inference that Appellant was in possession of narcotics before he struck and killed the officer. Because the evidence is relevant to motive to flee and/or intent to strike the officer with his automobile, it made a fact of consequence more or less probable.

A second factor that Courts look at is potential to impress the jury in an irrational way.[118] The trial court severely limited the presentation of this evidence to the jury. (R.R. Vol. XI, p. 216). Secret Service Agent Jeff Shaffer's cell phone examination revealed thousands of text messages and electronic communications. (R.R. Vol. XI, p. 206, 217; Record Exhibit 10). Here, the trial court narrowed the admission of these messages to just a few. (R.R. Vol. XII, p. 53; State's Exhibits

---

[115] *Id*. (internal quotation marks and citations omitted).
[116] *Montgomery*, 810 S.W.2d at 389-390.
[117] *Id*.
[118] *Id*.

48

295-301). The trial court also excluded photographs of the defendant holding marijuana and other implements connected with his drug dealing. (R. R. Vol. XII, p. 80-81). Appellant himself mentioned in his statement to Detective Cashatt he had smoked marijuana on the date of the murder. (R.R. Vol. X, p. 166). Troy Daniels testified that he smelled marijuana coming from Appellant's automobile and that Appellant appeared to be under the influence of marijuana. (R.R. Vol. XI, p. 171-172). Spencer Price, a crime scene technician, and Detective Brad Thacker each testified that Appellant's automobile smelled of marijuana the day after the murder. (R.R. Vol. X, p. 7-8; R.R. Vol. 11, p. 8-10). Thus, the jury was already aware of Appellant's drug habits prior to the introduction of the text messages. Therefore, the likelihood that the evidence improperly impressed the jury in an irrational way is miniscule at best.

The amount of time spent to develop the evidence, the third factor to be considered, is almost entirely attributed to Appellant's trial counsel.[119] At trial, Appellant's counsel kept the sponsoring witness on the witness stand for hours over a period of two days. (R.R. Vols. XI & XII). The State's direct examination of the witness was brief, while the cross examination and voir dire outside of the presence of the jury was not. Appellant argues in his brief that the State was able to somehow control the presentation of evidence such that the extraneous offense

_____

[119] *Id*. at 391.

49

evidence was introduced prior to the weekend recess. Even a cursory review of the record would show that such was not the case. Defense counsel maintained that they were calling witnesses during their case-in-chief; however, the defense rested without calling a single witness. (R.R. Vol. XII, p. 96, 98 -100, 102, 113). It would simply be impossible for the state to have anticipated this trial strategy. Because the State can hardly be penalized for Appellant's strategy at trial, the amount of time spent developing the evidence is not an issue in the instant case.

The fourth and final factor the courts consider when evaluating this issue is the proponents need for the evidence of an extraneous offense.[120] The evidence was offered by the state to prove motive and intent. Motive is always relevant and admissible to prove that a defendant committed the offense alleged.[121] Also, admission of extraneous offense evidence can aid in proving intent if the required intent cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed.[122] Defendant argued at trial that what happened was the result of a tragic accident. (R.R. Vol. IX, p. 15-20). Another defensive theory was that the driver of the automobile that struck the officer was unknown. (R.R. Vol. IX, p. 20). A third theory was the state could not produce any physical evidence connecting Appellant's vehicle with the murder.

---

[120] *Id.*
[121] *Crane v. State,* 786 S.W. 2d 338, 349-50 (Tex. Crim. App. 1990).
[122] *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App. –Austin 1996, pet. ref'd).

50

(R.R. Vol. IX, p. 20). As a result of these arguments, motive and intent are obviously at issue; however, Appellant also put the element of identity at issue by putting forth these defensive theories. Although the State did not argue the evidence was to assist in establishing identity at trial, this court should sustain a trial court's decision regarding the admissibility of evidence if it correct under any theory of law that is applicable to the case.[123] Because the State needed the evidence to prove motive, intent, and identity, this factor weighs in favor of admission.

Accordingly, the trial court did not abuse its discretion in determining that the extraneous offense evidence was relevant and admissible.

## C. Harm Analysis

Assuming arguendo that the trial court erred by admitting extraneous offense evidence, such admission does not constitute reversible error. Appellant correctly points out that the introduction of extraneous offense evidence is non-constitutional error.[124] Under Rule 44.2(b), non-constitutional error must be disregarded if it does not affect the appellant's substantial rights.[125] A substantial right is affected when the error had a "substantial and injurious effect or influence

---

[123] *Romero v. State*, 800 S.W. 2d 539, 543-44 (Tex.Crim.App. 1990).
[124] See *Martin v. State*, 176 S.W.3d 887, 897 (Tex. App. – Fort Worth 2005, no pet.); *Johnson v. State*, 84 S.W.3d 726, 729 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd).
[125] Tex. R. App. P. 44.2(b).

in determining the jury's verdict."[126]  But if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless.

In making a harm analysis, reviewing courts examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.[127]  The appellate court will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, the court has fair assurance the error did not influence the jury, or had but a slight effect.[128]  Overwhelming evidence of guilt is a relevant factor in any non-constitutional harm analysis.[129]

Here, the record reflects ample evidence of Appellant's guilt which is outlined in the State's Reply to Point of Error Number Eight.  Additionally, similar evidence was admitted at trial.  Error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection either before or after the complained-of ruling.[130]  Appellant himself mentioned in his statement to Detective Cashatt he had smoked marijuana on the date of the murder.  (R.R. Vol. X, p. 166).  Troy Daniels testified that he smelled

---

[126] *Morales*, 32 S.W.3d at 867; *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002).
[127] *Coble*, 330 S.W.3d at 280.
[128] *Johnson*, 72 S.W.3d at 351; *Peters v. State*, 31 S.W.3d 704, 722 (Tex. App. – Houston [1st Dist.] 2000, pet. ref'd).
[129] *Werner v. State*, 412 S.W.3d 542, 551 (Tex. Crim. App. 2013); *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).
[130] *Coble*, 330 S.W.3d at 282 (quoting *Leday*, 983 S.W.2d at 718; *Mayes*, 816 S.W.2d at 88.

marijuana coming from Appellant's automobile and that Appellant appeared to be under the influence of marijuana. (R.R. Vol. XI, p. 171-172). Officers talked with searching Appellant's vehicle testified that it smelled of marijuana the day after the murder. (R.R. Vol. X, p. 7-8; R.R. Vol. 11, p. 8-10).

Furthermore, the trial court granted a limiting instruction regarding the extraneous acts. (R.R. Vol. XII, p. 58). It is presumed that a jury follows instructions given by the trial court.[131] The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions.[132] In this case, Appellant has not offered any evidence to rebut the presumption that the jury followed the trial court's instructions.

In the instant case, a review of the record as a whole assures this Court that the erroneous admission of extraneous offense evidence, if it was error, did not influence the jury in its determination of Appellant's guilt, or had but a slight effect.

For these reasons, Appellant's fifth point of error should be overruled.

## Reply to Point of Error Number Six

---

[131] *Colburn*, 966 S.W.2d at 520; *Williams*, 937 S.W.2d at 490.
[132] See *Colburn*, 966 S.W.2d at 520.

*The trial court did not error in overruling Appellant's Motion to Suppress Evidence obtained from Defendant's cellular phone when Appellant gave valid consent for the seizure and search of his cellular telephone. In addition to the valid consent, officers also searched pursuant to a valid warrant.*

## Argument and Authorities

### A. Standard of Review

Motions to suppress are subject to a bifurcated standard of review.[133] In reviewing the trial court's ruling on a motion to suppress, deference is given to the trial court's determination of the historical facts and rulings on mixed questions of law and fact if the resolution of those questions turns upon the credibility and demeanor of witnesses.[134] Appellate courts are not at liberty to disturb the trial court's findings of fact as long as they are supported by the record. However, reviewing courts decide *de novo* whether the trial court erred in misapplying the law to the facts.[135]

### B. Application of Law to Facts

Appellant argues that the trial court erred in overruling his Motion to Suppress evidence obtained from a forensic search of his cellular phone. In trial and in his brief, Appellant contends that his phone was both illegally seized and

---

[133] *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).
[134] *Guzman v. State,* 955 S.W.2d 85, 87-88 (Tex. Crim. App. 1997); *Morfin v. State,* 34 S.W.3d 664, 666 (Tex. App.—San Antonio 2000, no pet.).
[135] *Carmouche,* 10 S.W.3d at 327; *Guzman,* 955 S.W.2d at 87-88; *Morfin,* 34 S.W.3d at 666.

searched.  However, Appellant consented to the search and seizure of his phone.

Additionally, Appellant's phone was searched pursuant to a valid search warrant.

1.  Consent

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution prohibit unreasonable searches and seizures initiated by the state.[136]  While the law expresses a clear preference for searches conducted pursuant to a warrant, there are several exceptions to the general warrant requirement.[137]  One such exception is voluntary consent, which has been "long approved" by the Supreme Court "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.'"[138]

In the instant case, following a hearing on Appellant's Motion to Suppress, the trial court filed its Findings of Facts and Conclusions of Law. (Sup. C.R. p. 27). The trial court clearly stated that "Defendant voluntarily gave his cellular telephone to Detective Giddens following his interview regarding the offense at issue.  Likewise, he consented to the original search of his phone." (Sup. C.R. p. 34).  The law is well-settled that an accused may consent to a search and thereby waive any irregularities in a search warrant or dispense altogether with the

---

[136] U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).
[137] *Flippo v. West Virgina*, 528 U.S.11, 13 (1999).
[138] *State v. Weaver*, 349 S.W.3d 521, 525-26 (Tex. Crim. App. 2011)(*quoting Jimeno*, 500 U.S. at 250).

necessity for one.[139]   Because the record shows that Appellant consented to the search of his cellular phone, the trial court reasonably could have concluded that a warrant was unnecessary.[140]   Even after the trial court found that Appellant voluntarily turned over the phone and gave valid consent to search it, the trial court went on to make findings and conclusions regarding the search warrant obtained by the Texarkana, Texas Police Department.  The trial court noted that the search warrant was "not overreaching and neither was the search." (Sup. C.R. p. 34). These findings of facts and conclusions of law are supported by the record.

At the hearing on Appellant's motion to suppress, Detective Billy Giddens testified that he asked Appellant if he could search his cell phone and Appellant gave consent. (R.R. Vol. VII, p. 76).  Detective Giddens stated that there was no doubt in his mind that Appellant had given free and voluntary consent to go through his phone. (R.R. Vol. VII, p. 76).

Appellant argues the police illegally seized the phone and, as a result, any subsequent search of the phone was likewise illegal, even if valid consent was obtained.  For this proposition Appellant mistakenly relies on *Brick v. State*.[141]  In *Brick*, the Court of Criminal Appeals engaged in a lengthy discussion of whether *Miranda* warnings are sufficient in themselves to attenuate tainted consent to

---

[139] *See Bates v. State,* 88 S.W.3d. 727, 727 *(*Tex. App.-Tyler 2002, pet. ref'd*)* (citing *Joslin v. State*, 305 S.W.2d 351, 352 (Tex. Crim. App. (1957)).
[140] See *Bates*, 88 S.W. 3d at 727.
[141] *Brick v. State*, 738 S.W.2d 676 (Tex. Crim. App. 1987).

conduct warrantless search after an illegal arrest.[142]  In his brief, Appellant does not argue that his detention or subsequent arrest were illegal.  To reach an analysis on the *Brick* factors, this Court would have to ignore the trial court's conclusion that Appellant voluntarily surrendered his phone.  Assuming for the purposes of argument the *Brick* factors are applicable to this case, the consent to search the phone was valid and, any evidence resulting from that search, was untainted.

In the instant case, Appellant gave his phone to Giddens at 10:04 on the video tape and then gave consent for the search of it at 10:36.  (R.R. VII, p. 74-75).  Because more than 30 minutes passed between turning the phone over and consent to search, the "temporal proximity" is a non-issue.[143]  The next factor discusses if the "seizure brought about police observation of the particular object which they sought consent to search."[144]  Because Appellant is not arguing that he was illegally detained or arrested, this factor is likewise unhelpful.  There is no evidence in the record to support the next factor which is, "whether the seizure resulted from flagrant police misconduct."[145]

At the start of the interview with Detective Cashatt, Appellant was given the *Miranda* warnings.  (R.R. Vol. X, p. 117).  These warnings are sufficient to put Appellant on notice that he is not required to talk to law enforcement unless he

---

[142] *Id*. at 680.
[143] *Id*.
[144] *Id*.
[145] *Id*. at 681.

chooses to do so. Although detectives asked if they could search his phone, Appellant was certainly aware he was under no legal obligation to cooperate with law enforcement. Therefore, the next two factors, "whether consent was volunteered or requested" and "whether the defendant was made fully aware of his right to refuse consent" do not weigh in favor of a finding the phone was illegally seized.[146] The final factor cited by Appellant is "whether the police purpose underlying the illegality was to obtain the consent." In his argument in support of this factor, Appellant states "[b]ased on the evidence, it is clear that Detective Giddens illegally seized Appellant's phone in order to gain consent to search." The problem with this argument is that Appellant fails to articulate the evidence on which he is relying. A review of the record simply does not reveal any evidence to support this contention.

### 2. Search Incident to a Lawful Arrest

The record supports a finding that Appellant's phone was lawfully seized incident to a lawful arrest and to prevent the destruction of evidence. In *Riley v. California*, the Supreme Court of the United States wrote:

> Both [defendants] concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant. That is a sensible concession. And once law enforcement officers have secured a cell phone, there is no longer any risk that the

---

[146] *Id.*

arrestees himself will be able to delete incriminating data from the phones.[147]

The Court went on to state that search incident to a lawful arrest is a reasonable intrusion under the Fourth Amendment.[148] As long as the arrest is lawful, a search incident to arrest requires no additional justification.[149] Here, Appellant was lawfully detained at the Bi-State Justice center at the time law enforcement came into possession of his cellular telephone. (R.R. Vol. VII, p. 75-76). While Appellant was detained, Detective Matt Cashatt was drafting the arrest warrant for the arrest of Appellant. (R.R. Vol. VII, p. 72-75). After the completion of that process, Appellant was arrested and charged with Aggravated Assault on a Public Servant. (R.R. Vol. VII, p. 88). Therefore, at the time of his arrest, shortly after his detention began, any and all property on Appellant's person would have been lawfully seized. (R.R. Vol. VII, p. 88). Therefore, even if this Court finds that Appellant did not give consent for the seizure of his cellular phone, such seizure was incident to a lawful arrest.

3. Search Warrant

Appellant next argues that the search warrant obtained was a "general warrant" and thus runs afoul of the constitution. The Fourth Amendment provides for the right:

---

[147] *Riley v. California*, -- U.S. --, 134 S.Ct. 2473, 2486 (2014)(citations omitted).
[148] *Id*.at 2483.
[149] *Id*.

to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [150]

The Fourth Amendment's "particularity" requirement is primarily meant to prevent general searches and the seizure of one thing under a warrant that describes another thing to be seized.[151]   In the instant case, officers sought to search Appellant's cellular phone, and that was the cellular phone that was searched.  Further, the trial judge found "[t]he information he was seeking and the description of the item in which he believed contained that information were specifically set out in his affidavit." (Sup. C.R. p. 34).

In his brief, Appellant argues, without citing authority, the good faith exception to the warrant requirement does not apply in the instant case.   In Texas, an officer may seize evidence of a crime even though the property is not particularly described in the search warrant when the objects discovered and seized are reasonably related to the offense in question, when the officer at the time of the seizure has a reasonable basis for drawing a connection between the observed objects and the crime that furnished the basis for the search warrant, and the discovery of such property is made in the course of a good faith search conducted

---

[150] U.S. Const., amend. IV.
[151] See *Marron v. United States*, 275 U.S. 192, 196 (1927).

within the perimeters of the search warrant.[152]  Because Agent Jeff Schaffer was relying in good faith on the search warrant provided, any evidence recovered from the search was lawfully obtained.

Appellant gave consent for the search and seizure of his cellular phone. However, Appellant's phone was also seized incident to a lawful arrest and searched pursuant to a valid search warrant.  In either event, the trial court did not err in overruling his Motion to Suppress.

## C. Harm Analysis

The harm review for constitutional errors is controlled by the Court of Criminal Appeals analysis in *Snowden v. State*.[153]  The reviewing court considers (1) the nature of the error, (2) the extent emphasized by the State, (3) the probable implications of the error, and (4) the weight the jury would likely have assigned to it in the course of the deliberations.[154]  The *Snowden* court emphasized, "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination 'whether beyond a reasonable doubt [that

---

[152] *Bower v. State*, 769 S.W.2d 887, 906 (Tex. Crim. App. 1989).
[153] *Snowden v. State*, 353 S.W.3d 815 (Tex. Crim. App. 2011).
[154] *Id*.

particular] error did not contribute to the conviction or punishment.'"[155] Here, the nature of the alleged error is that evidence of Appellant's phone and testimony based on the evidence were admitted in violation of the Fourth Amendment.

The trial court limited the State's admission of testimony and evidence regarding the cell phone and drug transactions. The state's direct examination of Agent Jeff Shaffer was brief and included a fraction of the text messages and information extracted from Appellant's phone. (R.R. Vol. XI, p. 206, 217). Troy Daniels testified that Appellant smelled of marijuana and appeared to be under the influence of marijuana at the park. (R.R. Vol. XI, p. 171-172). Spencer Price and Detective Brad Thacker each testified that Appellant's automobile smelled of marijuana the day after the murder. (R.R. Vol. X, p. 7-10). Appellant confessed to Detective Cashatt that he smoked marijuana on the day of the murder. (R.R. Vol. X, p. 166). Thus, the jury heard evidence of Appellant's drug habits from multiple sources. It was therefore unlikely that the jury would place a tremendous amount of weight on the complained-of evidence.

It is possible the jury considered the phone evidence, but it is unreasonable to think it were given much weight, if any, over the other evidence and testimony given by the witnesses, which proved Appellant was guilty of felony murder. Specifically, Kechelle Dansby observed Appellant, a person also known to her as

---

[155] *Id*. (quoting Tex. R. App. Proc. 44.2(a)).

"Butta," driving the silver sport utility vehicle (SUV) at the park. (R.R. Vol. XI, p. 103). Dansby observed Officer Sprague exit his patrol vehicle and stand under the brightest part of the street light (R.R. Vol. XI, p. 105-106). Dansby saw the silver SUV backed in to the parking space and then take off toward the park exit. (R.R. Vol. XI, p. 105). When the silver SUV approached the curb, the officer was waiving his hands in an attempt to the attention of the silver SUV. (R.R. Vol. XI, p. 106). The top of the silver SUV was jumping and bouncing over the curb. (R.R. Vol. XI, p. 105). Dansby witnessed the silver SUV run over Officer Sprague and the officer's body go underneath the silver SUV. (R.R. Vol. XI, p. 105). After the silver SUV struck the officer, the vehicle paused. (R.R. Vol. XI,, p. 105-106). Dansby testified that she believed Appellant was going to get out of the vehicle, but he drove off instead. (R.R. Vol. XI, p. 105-106).

Earnest Terrell Young saw Appellant, whom he knew through high school, at the park, standing next to the silver SUV. (R.R. Vol. XI, p. 131-132). Young was a passenger in a car and was trying to leave the park himself when he observed the silver SUV jump the curb trying to exit the parking lot. (R.R. Vol. XI, p. 133-134). When the vehicle jumped the curb, it appeared to accelerate and then Young saw a flashlight go up in the air. (R.R. Vol. XI, p. 134).

Troy Daniels saw Appellant at the park backed into a parking spot in the silver SUV. (R.R. Vol. XI, p. 171-172). The silver SUV pulled out of the parking

spot, the officer got out of the car and then Daniels saw the flashlight and the officer on the ground. (R.R. Vol. XI, p. 174). The car hesitated and then pulled off. (R.R. Vol. XI, p. 174). When the silver SUV pulled out of the parking lot, the officer had a flashlight in his hand and was waiving it around. (R.R. Vol. XI, p. 174). Daniels also saw the silver SUV hesitate before jumping the curb. (R.R. Vol. XI, p. 175). When Daniels called 911, he reported the automobile fled as Officer Sprague attempted to detain the automobile. (R.R. Vol. XI, p. 175-176). Daniels testified the silver SUV was getting pulled over by the officer and everyone else was getting away. (R.R. Vol. XI, p. 176-76).

Taking into account any and every circumstance apparent in the record, this court can have assurance that any error in admission of this evidence did not contribute to the conviction.

For the above-mentioned reasons, Appellant's sixth point of error should be overruled.

## Reply to Point of Error Number Seven

*Appellant failed to preserve error for appellate review. However, the State's attorneys did not engage in prosecutorial misconduct by rebutting the defense's claim that the witness had a motive or bias to testify. Furthermore, any error, if it was error, is not reversible error.*

### Argument and Authorities

**A. Preservation of Error**

64

Appellant has failed to preserve for appellate review any claim that the prosecutors engaged in prosecutorial misconduct. Generally, to preserve error in cases of alleged prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial.[156]  Appellant does not argue that error was preserved in this case, but instead relies on the preservation exception in *Rogers v. State*, a case in which the First Court of Appeals concluded that a prosecutor's unobjected-to but pervasive misconduct warranted reversal.[157]  In *Rogers*, the court reasoned:

> Where there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process…resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected.[158]

However, this exception applies only in "extreme cases of serious and continuing prosecutorial misconduct."[159] A reviewing court must determine whether the record shows ongoing prosecutorial misconduct of such a magnitude

---

[156] *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); Tex. R. App. Pro. 33.1.

[157] *Rogers v. State*, 725 S.W.2d 350, 358-61 (Tex. App. – Houston [1st Dist.] 1987, no pet.).

[158] *Id* at 359-60 (*see Berger v. United States*, 295 U.S. 78, 84, 88 (1935); *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977)).

[159] *Wilson v. State*, 819 S.W.2d 662, 664 (Tex. App. – Corpus Christi 1991, pet. ref'd).

that it deprived Appellant of fundamental fairness and due process of law.[160] The alleged prosecutorial misconduct in this case does not rise to such as level.

Unlike the case at hand, *Rogers* involved flagrant and repeated misconduct by the prosecutor who repeatedly made side-bar remarks and suggested inflammatory facts without any support in evidence while cross-examining the defendant and his character witnesses.[161] The *Rogers* court concluded that the prosecutor acted in bad faith and that her behavior "could serve no purpose other than to inflame and prejudice the minds of the jurors."[162]

Appellant raises an assertion of pervasive prosecutorial misconduct by alleging that the prosecutors engaged in "action that was clearly done to inflame prejudice against Appellant and simultaneously bolster its witness who had effectively been impeached." However, the record does not support a finding that the prosecutors acted in bad faith. The State's attorney elicited testimony regarding the threats after the witness had been attacked on cross-examination with inadmissible impeachment evidence. (R.R. Vol. XI, p. 144). Appellant's strategy at trail was obviously to create a false impression and have the jury believe that the witness had a bias or interest because he believed he was going to receive a benefit from the state in exchange for his testimony. When, in fact, the exact opposite was

---

[160] *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App. – San Antonio 2012, no pet.); See *Jiminez v. State*, 298 S.W.3d 203, 214 (Tex. App. – San Antonio 2009, pet. ref'd).
[161] *Rogers*, 725 S.W.2d at 358-61.
[162] *Id*. at 360-61.

66

true. (R.R. Vol. XI, p. 127-128). Texas Rule of Evidence 613 states "[a] party shall be permitted to present evidence rebutting any evidence impeaching one of said party's witnesses on grounds of bias or interest." Thus, the evidence concerning the fear on the part of the witness was admissible testimony. Therefore, it cannot be said that the prosecutors acted in bad faith or intended to inflame or prejudice the minds of the jury. Thus, *Rogers* is distinguishable, and Appellant was required to properly preserve his prosecutorial misconduct complaint, which he did not.

Appellant did not make a timely and specific objection that the State was engaging in prosecutorial misconduct. An objection at trial must comport with the complaint on appeal.[163] An appellate complaint about prosecutorial misconduct must be supported by an objection in the trial court that also specified prosecutorial misconduct.[164] At trial, defense objected to the line of questioning as improper and inflammatory. (R.R. Vol. XI, p. 159, 161). Without requesting an instruction to disregard, Appellant made a motion for mistrial which was denied by the trial court. (R.R. Vol. XI, p. 158-59, 163). However, Appellant's trial counsel never objected on the basis of prosecutorial misconduct and never requested an instruction to disregard the matter placed before the jury. Given that Appellant

---

[163] *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).
[164] *Shelling v. State*, 52 S.W.3d 213, 222-24 (Tex. App. – Houston [1st Dist.] 2001, pet. ref'd).

failed to properly preserve his claim of prosecutorial misconduct for appellate review, it is waived.

## C. Standard of Review

Allegations of prosecutorial misconduct are reviewed on a case-by-case basis.[165] In reviewing a claim of prosecutorial misconduct, reviewing courts must determine whether the prosecutor's conduct requires reversal on the basis of the probable effect on the minds of the jurors.[166] To warrant reversal, the question or comment must be harmful to the defendant and "of such a character so as to suggest the impermissibility of withdrawing the impression produced.[167]

## C. Application of Law to Facts

On direct-examination, Ernest Terrell Young testified that he was on deferred probation, had a pending motion to revoke, and had a warrant for his arrest. (R.R. Vol. XI, p. 127-128). Despite the fact that the evidence was before the jury, the defense attorney covered and then recovered this topic with the witness. (R.R. Vol. XI, p. 142-151). Mr. Young was also questioned about the specifics of offenses for which he had not been convicted. (R.R. Vol. XI, p. 144). Because such questioning is expressly prohibited by Texas Rule of Evidence 608,

---

[165] *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1998); *Hodge v. State*, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973).
[166] *Id.*
[167] *Hernandez v. State*, 219 S.W.3d 6, 14 (Tex. App. – San Antonio 2006), aff'd, 273 S.W.2d 685 (Tex. Crim. App. 2008) (quoting *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988) (en banc)).

it can only be assumed that this testimony was offered to expose bias or interest pursuant to Texas Rule of Evidence 613(b).[168] Defense counsel also questioned Young on the horrors of prison and implied that the witness would do anything to avoid imprisonment. (R.R. Vol. XI, p. 149-151). Thus, pursuant to Rule 613(b), the State's evidence of the witness's fear of testifying was relevant, permissible and necessary to rebut the defensive theory that Earnest Terrell Young had a bias or motive to testify favorably for the State.

Appellant relies on *Anderson v. State* to support his argument of prosecutorial misconduct based on a question asked on redirect-examination.[169] The *Anderson* Court determined whether double jeopardy bared a second trial due to prosecutorial overreaching in intentionally causing a mistrial in the first trial – not whether the question itself was improper.[170] Although the question asked by prosecutors in *Anderson* supported a motion for mistrial in that case, the complained-of question here is dissimilar.[171] Prosecutors did not ask the witness about threats he had received on direct-examination. Only after defense counsel attempted to impeach the witness by revealing alleged bias and a motive to testify for the State on cross-examination was the question asked by prosecutors on redirect-examination. Additionally, there is no allegation by Appellant and the

---

[168] See *Dixon v. State*, 2 S.W.3d 263, 271 (Tex. Crim. App. 1998).
[169] *Anderson v. State*, 635 S.W.2d 722 (Tex. Crim. App. 1982).
[170] *Id*. at 726.
[171] *Id*.

69

record does not support a conclusion that the prosecutors in this case engaged in "prosecutorial overreaching" in an attempt to force a mistrial. Therefore, *Anderson* is not applicable, and the prosecutors' actions were not the result of prosecutorial misconduct.

Appellant also argues that the State could not connect the threat to Appellant and asked the complained-of question in an attempt to inflame prejudice against Appellant. However, Appellant concedes in his brief that the prosecutors informed the trial court and defense counsel in a pretrial hearing that witnesses for the State had been threatened and assaulted. (R.R. Vol. VII, p. 111). The prosecutors made clear that no information suggested that the threats or assaults were committed by Appellant or at the request of Appellant. (R.R. Vol. VII, p. 113). Once the objection to the complained-of question was lodged by defense counsel, the State's attorney again explained that the threats had no connection to Appellant and the questioning of Young would reflect this fact. (R.R. Vol. VII, p. 160-61). Rather than inflaming the jury, the State's purpose in asking the about threats the witness had received was to rebut evidence of bias or motive as permitted by Rule 613(b). As such, the State did not engage in prosecutorial misconduct.

Accordingly, the State did not elicit the complained-of testimony in an effort to inflame or prejudice the jury or to deny Appellant a fair and impartial trial. Appellant's contention that the prosecutors engaged in misconduct is meritless.

Since there is a basis in the law and evidence for the argument, the record does not support a finding of prosecutorial misconduct.

## C. Harm Analysis

Appellant does not argue that the prosecutors' alleged misconduct resulted in constitutional error. Non-constitutional error must be disregarded if it does not affect the appellant's substantial rights.[172] A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict."[173] But if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless.[174]

In making a harm analysis, reviewing courts examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.[175] The appellate court will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, the court has fair assurance the error did not influence the jury, or had but a slight effect.[176] If overwhelming evidence dissipates the error's effect on the jury's function in

---

[172] TEX. R. APP. P. 44.2(b).
[173] *Morales*, 32 S.W.3d at 867.
[174] *Coble*, 330 S.W.3d at 280.
[175] *Id.*
[176] *Peters*, 31 S.W.3d 704 at 722.

determining the facts so that it did not contribute to the verdict, then the error is harmless.[177]

Appellant argues that the alleged prosecutorial misconduct "inflamed prejudice against Appellant" and "tainted the proceedings." In the instant case, a review of the record as a whole assures this Court that the State's discussion of the witness being threatened and his fear of testifying, if it was error, did not influence the jury in its determination of Appellant's guilt, or had but a slight effect. When performing a harm analysis, an appellate court may consider voir dire, each party's theory of the case, arguments to the jury, and relevant jury instructions.[178]

In the instant case, the State did not put forth testimony that Appellant, or anyone acting on his behalf, was a party to threatening the witnesses. (R.R. Vol. XI, p. 157). In fact, the State was trying to rebut the defensive theory that the witness had a motive or bias to testify in favor of the State. (R.R. Vol. XI, p. 157-160). Appellant argues the State "attempted to elicit testimony concerning alleged threats to one of its pivotal witnesses knowing full well they could establish no connection to Appellant concerning the purported threats. At trial, the State's attorney was interrupted by Appellant's objection, prior to asking the witness if Appellant had anything to do with the threats or fear. (R.R. Vol. XI, p. 157-160).

---

[177] *Cuba v. State*, 905 S.W.2d 729, 734 (Tex. App. – Texarkana 1995, no pet.) (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)).
[178] *Morales*, 32 S.W.3d at 867.

During a conference outside of the presence of the jury, the prosecutor offered to clarify the question in front of the jury, but defense counsel declined the offer. (R.R. Vol. XI, p. 161).

Additionally, this question was not emphasized by the State either during further questioning or closing argument.

Furthermore, as fully discussed in Reply to Point of Error Number Eight, there was ample evidence of Appellant's guilt. While the testimony of Earnest Terrell Young was relevant and somewhat helpful, the State could have met its burden of proof beyond a reasonable doubt with the testimony of Kechelle Dansby and Troy Daniels. Both Dansby and Daniels testified that Appellant was operating a silver SUV on the night of Officer Sprague's murder. (R.R. Vol. XI, p. 103, 171-72). Dansby observed Officer Sprague exit his patrol vehicle and stand under the brightest part of the street light (R.R. Vol. XI, p. 105-106). Dansby saw the silver SUV backed in to a parking space before taking off toward the park exit. (R.R. Vol. XI, p. 105). When Appellant approached the curb, Officer Sprague was waiving his hands in an attempt to get Appellant's attention. (R.R. Vol. XI, p. 106). Appellant's vehicle jumped the curb and ran over Officer Sprague. (R.R. Vol. XI, p. 105). Dansby witnessed Officer Sprague's body go underneath the silver SUV. (R.R. Vol. XI, p. 105).

Daniels observed Appellant drive out of his parking spot as Officer Spraque exited his vehicle with a flashlight. (R.R. Vol. XI, p. 174). When the silver SUV pulled out of the parking lot, Officer Sprague was waving his flashlight. (R.R. Vol. XI, p. 174). Daniels also saw the silver SUV hesitate and then jump the curb. (R.R. Vol. XI, p. 175). When Daniels called 911, he reported the automobile was trying to leave the scene as the officer was attempting to detain him. (R.R. Vol. XI, p. 175-76). Appellant confirmed he was the only person to operate the silver SUV on the night of the murder. (R.R. Vol. X, p. 168).

After examining the record as a whole, this Court has fair assurance that the alleged prosecutorial misconduct, if it was error, did not influence the jury, or had but a slight effect. Given that Appellant's substantial rights were not affected, any error is harmless.

For these reasons, Appellant's seventh point of error should be overruled.

## Reply to Point of Error Number Eight

*The State produced legally sufficient evidence to connect Appellant to the murder of Officer William Jason Sprague.*

### Argument and Authorities

**A. Standard of Review**

When conducting a legal sufficiency review, a reviewing court must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt – not whether it believes the evidence at trial established guilt beyond a reasonable doubt.[179]   In doing so, appellate courts assess all evidence in the light most favorable to the prosecution.[180]  It is presumed that the trier of fact resolved any conflicting inferences in favor of the prosecution and reviewing courts must defer to that resolution.[181]  The jury is the sole judge of the credibility of witnesses and may accept or reject any part of their testimony.[182] Therefore, the reconciliation of any conflicts in the evidence is within the exclusive province of the trier of fact.[183]  Consequently, a review of the legal sufficiency of the evidence accords great deference to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences therefrom.[184] The reviewing court must presume that the trier of fact resolved any conflicting inferences in favor of the prosecution and must defer to that resolution.[185]

---

[179] *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).
[180] *Laster*, 275 S.W.3d at 517 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).
[181] *Jackson*, 443 U.S. at 326.
[182] *Jonson v. State*, 517 S.W.2d 170, 173 (Tex. Crim. App. 1978).
[183] *Fuentes v. State*, 991 S.W.2d  267, 271 (Tex. Crim. App. 1999); *Chafin v. State*, 95 S.W.3d 549,  557 (Tex. App. – Austin 2002, no pet.); *see* TEX. CODE CRIM. PROC. art. 38.04.
[184] *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993); *Matson v. State*, 819 S.W.2d 839, 843-846 (Tex. Crim. App. 1991)
[185] *Turro*, 867 S.W. at 47; *Matson*, 819 S.W.2d at 846.

A verdict will not be overturned due to insufficiency unless the supporting evidence is irrational or unable to support proof beyond a reasonable doubt.[186]

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case.[187] The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[188]

## B. The Evidence

Although Appellant does not contest that Officer Sprague was struck by a motor vehicle and died as a result of his injuries, Appellant contends that the evidence is insufficient to connect him with the death of Officer William Jason Sprague. However, the State produced legally sufficient evidence to prove that Appellant is responsible for Officer Sprague's death and is guilty of felony murder.

### 1. Eyewitness Testimony

The eyewitness testimony sufficiently links Appellant and his vehicle to the murder of Officer Sprague.

---

[186] *Matson*, 819 S.W. 2d at 846.
[187] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).
[188] *Id*.

John McGee testified that he knows Appellant as "Butta." (R.R. Vol. X, p. 74). McGee saw Appellant at the park that night sitting in a silver SUV. (R.R. Vol. X, p. 82-83). The silver SUV was backed in a parking spot toward the end of the parking lot near the grass median. (R.R. Vol. X, p. 83). A second silver SUV had been at the park earlier but had already gone by the time Sprague responded to the park. (R.R. Vol. X, p. 84). When Officer Sprague pulled up, everyone started yelling that a cop was coming, "got scared, hopped in their cars and tried to leave fast." (R.R. Vol. X, p. 88-89).

McGee was parked in the same parking lot as Appellant when Sprague arrived on the scene. (R.R. Vol. X, p. 89). McGee was attempting to leave out of the south exit of the parking lot when he turned and looked toward the north side of the lot were Sprague's vehicle was parked. (R.R. Vol. 10, p. 90). Sprague's vehicle was parked near the northern exit to the parking lot. (R.R. Vol. 10, p. 90). When McGee was looking to the left waiting to turn out, he saw Appellant's vehicle driving fast through the parking lot attempting to leave. (R.R. Vol. 10, p. 91). McGee saw Appellant's SUV jump the northern curb and then the officer was on the ground. (R.R. Vol. X, p. 91-92). After Appellant jumped the curb, people starting filing out of their cars and shouting "he hit the cop." (R.R. Vol. X, p. 92). Although McGee did not actually see the impact, he knew the silver SUV struck the officer because there were no other vehicles exiting at that end of the parking

lot at that time. (R.R. Vol. X, p. 95). Stated another way, there were no other vehicles that could have struck the officer. (R.R. Vol. X, p. 99).

Kechelle Dansby observed Appellant driving the silver SUV at the park. (R.R. Vol. XI, p. 103). Dansby observed Officer Sprague exit his patrol vehicle and stand under the brightest part of the street light (R.R. Vol. XI, p. 105-106). Dansby saw the silver SUV backed in to a parking space before driving toward the park exit. (R.R. Vol. XI, p. 105). Dansby then observed the top of the silver SUV was jumping and bouncing over the curb. (R.R. Vol. XI, p. 105). When the silver SUV approached the curb, Officer Sprague was waiving his hands. (R.R. Vol. XI, p. 106). However, the silver SUV did not stop. (R.R. Vol. XI, p. 106). Dansby witnessed the silver SUV run over Officer Sprague and saw Sprague's body go underneath the silver SUV. (R.R. Vol. XI, p. 105).

Earnest Terrell Young also saw Appellant at the park standing next to the silver SUV. (R.R. Vol. XI, p. 131-132). Young was a passenger in a car and was trying to leave the park himself when he observed the same silver SUV jump the curb trying to exit the parking lot. (R.R. Vol. XI, p. 133-134). Appellant's vehicle appeared to accelerate as he jumped the curb. (R.R. Vol. XI, p. 134).

Troy Daniels also observed Appeallnt at the park backed into a parking spot in the silver SUV. (R.R. Vol. XI, p. 171-172). Appellant was sitting in the driver's seat with the window down. (R.R. Vol. 11, p. 72). When Sprague arrived at the

78

park, Appelalnt's SUV pulled out of the parking spot. (R.R. Vol. XI, p. 174). As Appellant pulled out of the parking lot, Sprague was waiving his flashlight towards the traffic. (R.R. Vol. XI, p. 174). Daniels testified that Appellant's SUV jumped the curb and he then saw Sprague on the ground. (R.R. Vol. 11, p. 174-75). The SUV hesitated before fleeing the scene. (R.R. Vol. XI, p. 174). When Daniels called 911, he reported that the officer was trying to detain the silver SUV. (R.R. Vol. 11, p. 175-176). He reported that this same SUV ran over the officer before fleeing the scene. (R.R. Vol. 11, p. 175-176). Daniels testified that he believed the silver SUV was being detained by the officer while the other vehicles were getting away. (R.R. Vol. XI, p. 176).

2. Appellant's Statement

Appellant confessed to being the operator and sole occupant of the vehicle that struck Officer Sprague.

Detective Matt Cashatt, the lead investigator, interviewed Appellant. (R.R. Vol. X, p. 127). Cashatt, who has had training in certain investigative techniques, testified Appellant showed no signs of being uncomfortable when answering basic questions or talking about background information. (R.R. Vol. X, p. 155-156). However, Appellant began speaking in incomplete sentences and was searching for answers when discussing the murder. (R.R. Vol. X, p.156). Initially, Appellant said he "rolled through" the park but did not stop. (R.R. Vol. X, p.157). Appellant

claimed he left the park before the officer arrived. (R.R. Vol. X, p.157). By his own admission, Appellant was the sole occupant and operator of the silver SUV on the night the crime occurred. (R.R. Vol. X, p. 164). Appellant's story later changed, and he said that he stopped to talk to his cousin. (R.R. Vol. X, p.165-166). Appellant gave multiple names for this alleged cousin. (R.R. Vol. X, p. 166). Sanders said he left the park and went to Keante's house, however; after an exhaustive investigation, no such individual was ever located. (R.R. Vol. X, p. 168).

   3.   Medical and Physical Evidence

In addition to Appellant's statement and the eyewitness testimony, the State produced medical and physical evidence that corroborated the charge of felony murder.

The medical evidence establishes that Officer Sprague died as a result of injuries sustained from being struck by a vehicle. Dr. Marc Smith, a Texarkana neurosurgeon, treated Sprague after he was struck by the vehicle. (R.R. Vol. X, p. 218-220). Dr. Smith determined that Officer Sprague suffered catastrophic injury, including a significant skull base fracture, due to a fall from standing after he was struck by a vehicle (R.R. Vol. X, p. 229-231). Sprague died as a result of being struck by a vehicle. (R.R. Vol. X, p. 239).

The medical examiner testified that striking someone with a vehicle is an act clearly dangerous to human life. (R.R. Vol., X, p. 247-248). Sprague had multiple skull fractures, and all twelve ribs on his left side were broken. (R.R. Vol., X, p. 257). There were bruises on the officer's lungs and blood in his chest cavity. (R.R. Vol., X, p. 257-258). The abrasions on the officer's body were consistent with being drug on asphalt or a rocky surface. (R.R. Vol., X, p. 260). The left thigh bone was fractured. (R.R. Vol., X, p. 260-261). Because the injuries were focused on the left side of his body and his head, this would indicate that he was struck primarily on the left side of his body. (R.R. Vol., X, p. 262). The cause of death was blunt force injuries. (R.R. Vol., X, p. 263).

The physical evidence also connects Appellant's vehicle to Officer Sprague's death along with corroborating the eyewitness testimony and the medical evidence. A description of the suspect vehicle, a sliver SUV, was released after Officers Micah Brower and Bo Carter reviewed the in-car video from Sprague's patrol unit. (R.R. Vol. IX, p. 166-167). On the video, Sprague can be heard yelling "hey, stop," and then static can be heard from Sprague's body microphone. (R.R. Vol. IX, p. 168). Only a few cars are visible on Sprague's in-car video. (R.R. Vol. IX, p. 197). On the video, Carter observed a silver SUV exit a nearby parking space and drive toward the exit by which Sprague's vehicle was

parked. (R.R. Vol. IX, p.197-198). Carter testified he was 100% sure that the silver SUV was the suspect vehicle. (R.R. Vol. IX, p. 199).

Crime Scene Investigator Spencer Price noted a reddish brown mark and tears on the officer's duty shirt. (R.R. Vol. IX, p. 278). He believed the dirt transfer on the left side of the officer's uniform was caused by a vehicle. (R.R. Vol. IX, p. 278). There were small marks on the back of the officer's shirt that appeared to be caused from the uniform catching on a rocky surface or asphalt. (R.R. Vol. IX, p. 278-279). Sprague's duty gear, including his badge, radio, radio clip, handcuffs and his handgun were also damaged in a manner consistent with being dragged on a rough surface. (R.R. Vol. IX, p. 284-285).

Having learned that the suspect vehicle jumped the curb, Price responded to the park and observed the faint outline of tire tracks. (R.R. Vol. X, p. 13-20). The approximate width of the tracks was consistent with the wheel base of the GMC Acadia. (R.R. Vol. X, p. 13-14). There were also white marks on the curb that were consistent with being struck by the metal frame of a vehicle (R.R. Vol. X, p. 14-15). Price testified that he was able to place Sprague's patrol unit in the same position as on the night of the murder after observing Sprague's in-car. (R.R. Vol. X, p. 52-53). Because the rear camera was fixed, officers were able to mark the approximate placement of Sprague's feet at the time he was struck. (R.R. Vol. X, p. 52).

Appellant's silver, Acadia SUV was located and identified as the suspect vehicle. (R.R. Vol. X, p. 6-7). Crime Scene Investigator Marc Sillivan noted dirt removal on the undercarriage and the fender well on the passenger side of Sanders' vehicle. (R.R. Vol. XI, p. 25-27). There was also damage on the metal pieces of the inside fender well. (R.R. Vol. XI, p. 28). The bumper of the vehicle was pushed out, and the bumper retention clips were broken. (R.R. Vol. XI, p. 28). Officers observed wipe marks on the front of the car as if someone attempted to wipe down only the front part of the grill. (R.R. Vol. XI, p. 30). Crime Scene Investigator Shawna Yontz testified that there was a disturbance of dust on the front hood and partial fingerprint impressions in the dust. (R.R. Vol. XI, p. 50). There was dust all over the vehicle except for this area of disturbance. (R.R. Vol. XI, p. 50). It appeared that something large had removed the dust from the front part of the vehicle and fingerprint impressions appeared in long lines on the front of the passenger side of the vehicle as if something had dragged across the surface. (R.R. Vol. XI, p. 50-51).

Although Appellant argued at trial that his vehicle displayed only minimal damage, Crime Scene Investigator Scott Lillis testified that he has worked cases in the past where an individual was struck by an automobile without the vehicle sustaining any damage. (R.R. Vol. XI, p. 96-97). In this case, he believed the

damage on Sanders' SUV is consistent with striking a human being. (R.R. Vol. XI, p. 97).

There was no other information that any other vehicle struck the officer. (R.R. Vol. X, p. 170). The damage observed on the silver SUV was consistent with the injuries that the officer suffered. (R.R. Vol. X, p. 170).

6. Circumstantial Evidence

Circumstantial evidence is as probative as direct evidence when establishing guilt, and appellate review of circumstantial evidence is the same as used for direct evidence.[189] Therefore, a reviewing court draws no distinction between the two.[190] Here, the circumstantial evidence proves Appellant's identity along with his intent and motive to commit Aggravated Assault on a Public Servant and/or Evading Arrest or Detention.

On the night of the murder, Daniels testified that he smelled the odor of marijuana on Appellant and that he under the influence. (R.R. Vol. XI, p. 172-173). Appellant admitted to smoking marijuana on the day Officer Sprague was murdered. (R.R. Vol. X, p. 166). Price along with Detective Brad Thacker searched the interior of Appellant's vehicle and noticed the faint smell of marijuana. (R.R. Vol. X, p. 7-8; Vol. XI, p. 8-10).

---

[189] *Kuciemba*, 310 S.w.3d at 462; *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).
[190] *Id*.

Additionally, Secret Service Agent Jeff Shaffer extracted text messages and other information from Appellant's cell phone indicating that Appellant was discussing marijuana on the day of the murder. (R.R. Vol. XII, p. 62). Appellant was planning to meet an acquaintance at the park and stated that he wanted to get her high. (R.R. Vol. XII, p. 61). In response to a request for marijuana, Appellant indicated that he was in possession of marijuana while at work. (R.R. Vol. XII, p. 61-62). Appellant was arranging drug transactions and providing information for certain amounts of marijuana. (R.R. Vol. XII, p. 61).

## C. Conclusion

A review of the evidence in the light most favorable to the verdict reveals that a jury could have reasonably found that during the course of committing the felony offenses of Aggravated Assault on a Public Servant and/or Evading Arrest or Detention, Appellant caused the death of Officer William Jason Sprague. Therefore, legally sufficient evidence supported Appellant's conviction for Felony Murder.

For these reasons, Appellant's eighth point of error should be overruled.

## Prayer for Relief

**WHEREFORE, PREMISES CONSIDERED,** there being legal and competent evidence sufficient to justify the conviction and punishment assessed in this case and no reversible error appearing in the record of the trial of the case, the State of Texas respectfully prays that this Honorable Court affirm the judgment and sentence of the trial court below.

<div style="margin-left:50%">

**Respectfully Submitted:**

**Jerry D. Rochelle**
*Criminal District Attorney*
Bowie County, Texas
601 Main Street
Texarkana, Texas 75501
Phone: (903) 735-4800
Fax: (903) 735-4819

/s/ *Samantha J. Oglesby*

By: **Samantha J. Oglesby**
*Assistant Criminal District Attorney*
Bowie County, Texas
601 Main Street
Texarkana, Texas 75501
Phone: (903) 735-4800
Fax: (903) 735-4819

**Attorneys for the State**

</div>

## Certificate of Compliance

I, Samantha J. Oglesby, hereby certify that, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, the State's Brief contains 19,916 words. This excludes the caption, identity of parties and counsel, table of contents, index of authorities, statement of the case, certificate of compliance, proof of service, and signature.

/s/ *Samantha J. Oglesby*

**Samantha J. Oglesby**

# Certificate of Service

I, Samantha J. Oglesby, certify that I have served a true and correct copy of the foregoing Brief for the State upon Craig Henry, Attorney for Appellant, on this the 12th day of March, 2015.

/s/ *Samantha J. Oglesby*
**Samantha J. Oglesby**